Alfred GONZALEZ, Appellant,

v.

The STATE of Texas.

No. 1466–98.

Court of Criminal Appeals of Texas,
En Banc.

Jan. 5, 2000.

Linda Icenhauer-Ramirez, Austin, for appellant.

C. Bryan Case, Jr., Asst. Dist. Atty., Matthew Paul, State's Atty., Austin, for State.

## OPINION

McCORMICK, P.J., delivered the opinion of the Court, in which MANSFIELD, KELLER, HOLLAND, WOMACK and KEASLER, JJ., joined.

In this case we decide that appellant's "multiple punishments for the same offense" federal constitutional double jeopardy claim [1] is a forfeitable claim which may not be raised for the first time on appeal.[2]

Count I of appellant's indictment charged aggravated robbery in three separate paragraphs alleging alternative means of committing this offense. These paragraphs were submitted to the jury disjunctively. Count II of appellant's indictment charged injury to an elderly individual in a

---

1. For brevity's sake, we will refer to this as a "multiple punishments" claim or issue.

2. See generally *Marin v. State*, 851 S.W.2d 275 (Tex.Cr.App.1993); Tex.R.App.Proc. 33.1(a).

single paragraph. In a single proceeding a jury convicted appellant of both offenses by a general verdict.

Appellant claimed for the first time on appeal that it was *possible* he was multiply punished for the same offense because the injury to an elderly individual offense is a lesser included offense of the aggravated robbery offense as set out in paragraphs one and three and the jury's general guilty verdict of aggravated robbery *could* have rested on one of these paragraphs.[3] Appellant conceded that if the jury's general guilty verdict of aggravated robbery rested on paragraph two, then *no* multiple punishments issue was presented.[4]

The Court of Appeals, therefore, rejected appellant's multiple punishments claim because the jury's general guilty verdict of aggravated robbery could have rested on paragraph two. See *Gonzalez v. State*, 973 S.W.2d 427, 430–31 (Tex.App.—Austin 1998). The Court of Appeals also decided that because of this it was appellant's "burden to preserve, in some fashion, a double jeopardy objection at or before the time the charge [was] submitted to the jury." See *id.* The Court of Appeals did not analyze whether, and effectively decided it did not matter that, the injury to an elderly individual offense is a lesser included offense of the aggravated robbery offense as set out in paragraphs one and three. See *id.*

We granted appellant's discretionary review petition on two grounds. Ground one asserts the Court of Appeals erred to reject appellant's multiple punishments claim because the jury's general guilty verdict of aggravated robbery *could* have rested on paragraphs one or three. Appellant argues that if the injury to an elderly individual offense is a lesser included offense of the aggravated robbery offense as set out in paragraphs one and three, then he should be "afforded [double jeopardy] protection." See *Gonzalez*, 973 S.W.2d at 431. Ground two asserts the Court of Appeals erred to decide that it was appellant's burden to preserve "in some fashion" his multiple punishments claim "at or before the time the charge [was] submitted to the jury." See *id.*

■ The general substantive constitutional rule implicated by ground one is that "a general verdict [is] valid so long as it [is] legally supportable on one of the submitted grounds—even though that [gives] no assurance that a valid ground, rather than an invalid one, [is] actually the basis for the jury's action." See *Griffin v. U.S.*, 502 U.S. 46, 112 S.Ct. 466, 469–74, 116 L.Ed.2d 371 (1991). The United States Supreme Court carved out an exception to this general rule in *Stromberg v. California*, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931).

The *Stromberg* exception applies when one of the invalid submitted grounds rests on constitutionally protected speech or conduct. See *Griffin*, 112 S.Ct. at 471;[5] *Street v. New York*, 394 U.S. 576, 89 S.Ct.

---

3. See generally *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *Whalen v. United States*, 445 U.S. 684, 693–94, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980).

4. We express no opinion on whether the injury to an elderly individual offense is a lesser included offense of, and, therefore, could be considered the "same offense" as, the aggravated robbery offense as set out in any of the three paragraphs as we did not grant discretionary review on this issue. We note, however, that the Legislature apparently has authorized multiple punishments even if these offenses could be considered the "same" under double jeopardy principles. See Tex.Pen.

Cd., Section 22.04(h) (person "subject to prosecution" for injury to elderly individual and "another section of this code may be prosecuted under either or *both* sections"); *Hunter*, 459 U.S. at 366, 103 S.Ct. 673; *Whalen*, 445 U.S. at 693–94, 100 S.Ct. 1432. (Emphasis Supplied).

5. *Griffin* characterized *Stromberg* as not standing "for anything more than the principle that, where a provision of the Constitution forbids conviction on a particular ground, the constitutional guarantee is violated by a general verdict that may have rested on that ground." *Griffin*, 112 S.Ct. at 471.

1354, 1362–64, 22 L.Ed.2d 572 (1969) (issue was whether defendant's constitutionally protected speech "could have been an independent cause" of his flag-burning conviction), and at 1370 (Warren, C.J., dissenting) ("teaching of *Stromberg*" is "that, if there is any possibility the general verdict below rests on speech or conduct entitled to constitutional protection, then the conviction must be reversed"); [6] see also *Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969); [7] *Cramer v. United States*, 325 U.S. 1, 65 S.Ct. 918, 921, 935–41, 89 L.Ed. 1441 (1945) (treason conviction could have rested on conduct "not clearly within the constitutional definition" of treason under Article III, Section 3, of the United States Constitution); *Williams v. North Carolina*, 317 U.S. 287, 63 S.Ct. 207, 210, 87 L.Ed. 279 (1942) (North Carolina conviction could have rested on constitutionally protected conduct by virtue of out-of-state divorce decree that North Carolina was constitutionally compelled to honor under the Full Faith and Credit Clause). Most United States Supreme Court cases applying the *Stromberg*

exception are First Amendment cases in which the United States Supreme Court characterized the invalid submitted ground as involving constitutionally protected "speech." [8] For the *Stromberg* exception to apply here, we arguably would have to decide that robbing, assaulting and injuring elderly individuals are constitutionally protected conduct.

■ We, however, find it unnecessary to decide whether the *Stromberg* exception applies here because we agree with the Court of Appeals that appellant had the burden to "preserve, in some fashion, a double jeopardy objection at or before the time the charge [was] submitted to the jury." We, therefore, dismiss ground one of appellant's discretionary review petition, overrule ground two of appellant's discretionary review petition, and hold appellant forfeited his multiple punishments double jeopardy claim.

■ Our case-law on preservation of double jeopardy claims is not a model of

---

**6.** *Street* was a flag-burning case. The majority opinion and Chief Justice Warren's dissenting opinion agreed on the "teaching of *Stromberg*." Compare *Street*, 89 S.Ct. at 1362–64 (reversal required if defendant's constitutionally protected "words could have been an independent cause of his conviction"), *with*, *Street*, 89 S.Ct. at 1370 (Warren, C.J., dissenting) ("if there is any possibility the general verdict rests on speech or conduct entitled to constitutional protection, then the conviction must be reversed"). They disagreed, however, on whether the defendant's conviction could have been based on constitutionally protected speech. Compare *Street*, 89 S.Ct. at 1364 (defendant's conviction could have been based on constitutionally protected speech), *with*, 89 S.Ct. at 1367 (Warren, C.J., dissenting) (defendant's conviction based solely on unconstitutionally protected conduct of burning the American flag). Chief Justice Warren's dissenting opinion in *Street*, therefore, accurately sets out the current "teaching of *Stromberg*."

**7.** *Leary* applied the *Stromberg* exception because the defendant's conviction could have rested on an unconstitutional presumption that supplied the required *mens rea* for conviction. See *Leary*, 89 S.Ct. at 1545–57. In

*Leary* the defendant was convicted of "transporting" or "concealing" within the United States imported marijuana with the defendant "knowing" the marijuana had been imported into the United States. See *id*. The statute provided a presumption that the defendant knew the marijuana had been imported into the United States from the defendant's mere possession of the marijuana. See *id*. After concluding that most marijuana users do not know where their marijuana comes from, the Supreme Court decided the presumption was unconstitutional. See *Leary*, 89 S.Ct. at 1545–57, 1557. Consistent with the "teaching of *Stromberg*," the problem in *Leary* was that the "knowledge" presumption made criminal conduct that did not constitute the crime as defined by the statute. See *Leary*, 89 S.Ct. at 1557.

**8.** See *Stromberg*, 51 S.Ct. at 533–35; see also *Bachellar v. Maryland*, 397 U.S. 564, 90 S.Ct. 1312, 1315–16, 25 L.Ed.2d 570 (1970); *Street*, 89 S.Ct. at 1362–64; *Terminiello v. Chicago*, 337 U.S. 1, 69 S.Ct. 894, 896, 93 L.Ed. 1131 (1949); *Thomas v. Collins*, 323 U.S. 516, 65 S.Ct. 315, 322, 89 L.Ed. 430 (1945).

clarity.[9] The overriding principles expressed by this case-law are that, because of the fundamental nature of double jeopardy protections, a double jeopardy claim may be raised for the first time on appeal[10] or even for the first time on collateral attack[11] when the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record and when enforcement of usual rules of procedural default serves no legitimate state interests. Cases such as *Shaffer v. State*[12] and *Ex parte Evans*[13] illustrate these principles.[14]

In *Shaffer*, the defendant raised a successive prosecutions claim in the trial court based only on an unsworn declaration of a prior acquittal. See *Shaffer*, 477 S.W.2d at 876–77. This Court decided the double jeopardy claim was not properly raised in either the trial court or this Court because any double jeopardy violation was not apparent on the face of the record and enforcement of the usual rules of procedural default served legitimate state interests. See *Shaffer*, 477 S.W.2d at 876–77.[15]

In *Evans*, the habeas corpus applicant raised a successive prosecutions claim for

9. We have decided that a pretrial writ of habeas corpus is usually the procedural vehicle by which a defendant should raise a "successive prosecutions for the same offense" double jeopardy claim. See *Ex parte Robinson*, 641 S.W.2d 552, 553–56 (Tex.Cr.App. 1982) (defendant may in pretrial writ of habeas corpus proceeding raise and appeal a successive prosecutions claim before the trial of the indictment which he attacks); see also *Ex parte Apolinar v. State*, 820 S.W.2d 792, 793–94 (Tex.Cr.App.1991). This is because requiring a defendant to go through trial before appealing a successive prosecutions claim is inconsistent with one double jeopardy guarantee against being consecutively tried for the same offense. See *Robinson*, 641 S.W.2d at 554. These considerations do not apply to a multiple punishments claim because it "can be fully vindicated on an appeal following final judgment." See *id.*

10. Most of the cases discussed here are pre-rules of appellate procedure cases. We find it unnecessary to decide what, if any, effect the current rules of appellate procedure have on these pre-rules cases as our holding in this case is consistent with these pre-rules cases and the current rules of appellate procedure. See Rule 33.1(a) (generally requiring issue to be raised in trial court before it may be raised on appeal).

We note, however, that we recently addressed the merits of a multiple punishments claim for the first time on collateral attack in *Ex parte Ervin v. State*, 991 S.W.2d 804, 806 (Tex.Cr.App.1999). It would be unusual to decide that a defendant like the one in *Ervin* may not raise a multiple punishments claim for the first time on appeal but he may raise it for the first time on collateral attack. Of course, *Ervin* addressed no procedural default or preservation issues as none were raised.

11. In addition to the considerations discussed in the body of this opinion, the State's legiti-

mate finality interests and recent statutory developments are relevant in determining whether a defendant may raise a double jeopardy claim for the first time on collateral attack. See *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex.Cr.App.1996) (op. on reh'g); *Ex parte Drake*, 883 S.W.2d 213, 215 (Tex.Cr. App.1994); *Ex parte Goodman*, 816 S.W.2d 383, 387 (Tex.Cr.App.1991) (Clinton, J., concurring) ("analysis of what is cognizable on collateral attack should be informed first and foremost by the State's legitimate interest in the integrity and finality of convictions"); Article 11.07, Section 4, V.A.C.C.P.; Article 11.071, Section 5, V.A.C.C.P.

12. *Shaffer v. State*, 477 S.W.2d 873 (Tex.Cr. App.1971).

13. *Ex parte Evans*, 530 S.W.2d 589 (Tex.Cr. App.1975).

14. The Court of Appeals also seems to have recognized these principles. See *Gonzalez*, 973 S.W.2d at 427 fn. 3.

15. *Shaffer* distinguished *Duckett v. State*, 454 S.W.2d 755 (1970), which declined to enforce the usual rules of procedural default.

"In [*Duckett*] the two convictions were in the same court, on the same day, before the same judge, and were based on the same evidence. Clearly, the enforcement of the statutory [procedural default] requirements in [*Duckett*] would have served no state interest whatsoever. In the case at bar, however, such is not the case. The alleged former acquittal did not occur in the same court, and no evidence concerning the verdict in [the prior] cause was ever offered. The trial court had no way of knowing of the prior proceeding other than by way of evidence offered by appellant." *Shaffer*, 477 S.W.2d at 876.

the first time on habeas corpus. See *Evans*, 530 S.W.2d at 591. Relying on *Duckett*,[16] *Evans* decided, based on the now discarded "carving" doctrine, that the habeas corpus applicant could raise the successive prosecutions claim for the first time on collateral attack essentially because the double jeopardy violation was apparent on the face of the record. See *Evans*, 530 S.W.2d at 591–92; but see *Gardner*, 959 S.W.2d at 199.

Federal law is more or less consistent with our *Shaffer* line and *Duckett/Evans* line of cases. Compare *United States v. Broce*, 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989), *with*, *Menna v. New York*, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975). Consistent with our *Shaffer* line of cases, *Broce* decided that a defendant who pled guilty to "two counts with facial allegations of distinct offenses" could not raise a successive prosecutions claim for the first time on collateral attack primarily because this would have required "further proceedings at which to expand the record with new evidence." See *Broce*, 109 S.Ct. at 763–66.

Consistent with our *Evans/Duckett* line of cases, *Menna* decided that a guilty-pleading defendant could raise a successive prosecutions claim for the first time on appeal because the claim could have been resolved "on the basis of the existing record" which showed an indictment "facially duplicative of the earlier offense of which the defendant had [previously] been convicted." See *Menna*, 96 S.Ct. at 242; see also *Broce*, 109 S.Ct. at 765–66. In *Menna*, the Court stated:

"We do not hold that a double jeopardy claim may never be waived. We simply hold that a plea of guilty to a charge does not waive a claim that—*judged on its face*—the charge is one which the State may not constitutionally prosecute." *Menna*, 96 S.Ct. at 242 fn. 2. (Emphasis Supplied).

It has, however, been suggested that our decision in *Phillips v. State*[17] stands as authority that *all* multiple punishments claims may be raised for the first time on appeal. Relying on the United States Supreme Court's decision in *Jeffers v. United States*,[18] *Phillips* decided that the defendant's "waiver" of a successive prosecutions claim with a successful "motion to consolidate"[19] did not "waive" a multiple punishments claim which the defendant raised for the first time on appeal.

The suggestion that *Phillips* and *Jeffers* stand for the proposition that *all* multiple punishments claims may be raised for the first time on appeal reads too much into these cases. *Phillips* and *Jeffers* fit within the *Evans/Duckett* line of cases because their multiple punishments claims were capable of being addressed on the existing record and arguably no legitimate state interests would have been served by applying the usual rules of procedural default.

In addition, *Jeffers* did not decide that *all* multiple punishments claims may be raised for the first time on appeal. After *Jeffers* decided that the defendant's successfully opposing the government's motion to consolidate "deprived him of any right that he might have had against consecutive trials,"[20] *Jeffers* went on to ad-

16. See Footnote 15.

17. See *Phillips v. State*, 787 S.W.2d 391, 393 (Tex.Cr.App.1990).

18. See *Jeffers v. United States*, 432 U.S. 137, 97 S.Ct. 2207, 2218–20, 53 L.Ed.2d 168 (1977)

19. *Phillips* erroneously relied on *Jeffers* for this proposition because *Jeffers* decided the defendant "waived" a successive prosecutions claim when he successfully *opposed* the gov-

ernment's motion to consolidate. See *Jeffers*, 97 S.Ct. at 2212, 2218. When a defendant, like the one in *Phillips*, successfully urges a motion to consolidate, there can be no successive prosecutions problem since only a single proceeding is involved.

20. It is significant that *Jeffers* did *not* decide that this constituted a "waiver" of the defendant's successive prosecutions claim. See *Jeffers*, 97 S.Ct. at 2218.

dress *sua sponte* a multiple punishments claim even though "both parties, throughout the proceedings, appear to have assumed that [the case presented] no [multiple punishments] problem." See *Jeffers*, 97 S.Ct. at 2218.

This, however, does not amount to a holding that *all* multiple punishments claims may be raised for the first time on appeal. Appellate courts, even the Supreme Court, have addressed the merits of arguably unpreserved claims especially when, as in *Jeffers*, the other party does not object. Compare *Ervin*, 991 S.W.2d at 806. Nothing in *Jeffers* precludes this Court from deciding that appellant may not raise his multiple punishments claim for the first time on appeal.

Finally, it has been suggested that a defendant's right to be "free from cumulative punishments" is a category two right under *Marin* and may be raised for the first time on appeal unless this right is affirmatively "waived" under *Johnson v. Zerbst* which means appellant may raise his multiple punishments claim for the first time on appeal since he did not affirmatively "waive" it.[21] Several United States Supreme Court cases have been cited to support this.[22]

The argument seems to be that these cases require an affirmative, *Johnson v. Zerbst* "waiver" of double jeopardy rights for *Marin* purposes because these cases assessed the effectiveness of a particular "waiver" of double jeopardy rights in a variety of contexts. These cases actually are to the contrary. See, e.g., *Broce*, 109 S.Ct. at 764 ("conscious waiver" unneces-

sary "with respect to [double jeopardy] defense relinquished by a plea of guilty"). These cases very carefully pointed out that they were not applying "traditional waiver concepts" under *Johnson v. Zerbst*. See, e.g., *Broce*, 109 S.Ct. at 764; *Dinitz*, 96 S.Ct. at 1080–81; *Menna*, 96 S.Ct. at 242; *Green*, 78 S.Ct. at 226 ("[w]aiver is a vague term used for a great variety of purposes, good and bad, in the law"). These cases, therefore, do not support the proposition that double jeopardy rights require an affirmative, *Johnson v. Zerbst* "waiver" for *Marin* purposes. .

In this case, assuming the injury to an elderly individual offense is a lesser included offense of the aggravated robbery offense as set out in paragraphs one and three, the face of the record nevertheless fails to show a multiple punishments violation because the jury's general guilty verdict of aggravated robbery could have rested on paragraph two. Appellant, therefore, has not sustained his appellate burden of presenting a record showing on its face any multiple punishments violation.

More important, requiring appellant to have timely raised his multiple punishments claim in the trial court serves legitimate state interests and is consistent with the underlying policies of the general rules of procedural default. See *Posey v. State*, 966 S.W.2d 57, 62 (Tex.Cr.App.1998). Timely raising the matter in the trial court would have provided the trial court and the prosecution an opportunity to remove the basis of the objection, and it also would have provided the prosecution the opportunity to obtain an aggravated robbery con-

**21.** See *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) ("waiver" is "intentional relinquishment or abandonment of a known right or privilege" and "waiver" of right to counsel cannot be inferred from a silent record); *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977) (same rule applies to jury trial right); *Marin*, 851 S.W.2d at 279 (discussing category two rights of litigants which the system must implement unless affirmatively waived *vis-a-vis Johnson v. Zerbst* ).

**22.** See *Broce*, 109 S.Ct. at 764; *Ricketts v. Adamson*, 483 U.S. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987); *United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); *Jeffers*, 97 S.Ct. at 2217–18; *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *Menna*, 96 S.Ct. at 242; *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).

viction based on paragraph two without the risk of an unnecessary retrial in the face of a valid multiple punishments claim.

"The State has a valid interest in avoiding problems which would interfere with its lawful prosecution of alleged crimes and in being able to research and prepare responses to claims of double jeopardy. It also has a valid interest in being able to investigate and present any evidence which might exist that supports or controverts claims of double jeopardy in order that prosecutions continue when it is proper to do so. It has a valid interest in conserving valuable judicial time by not going through unnecessary trials when a double jeopardy claim is valid." [23]

The judgment of the Court of Appeals is affirmed.

MEYERS, J., filed a dissenting opinion in which PRICE and JOHNSON, JJ., joined.

MEYERS, J., filed a dissenting opinion in which PRICE and JOHNSON, J.J., joined.

Appellant did not relinquish his right to be free from cumulative punishments by failing to object to the proposed jury charge. The Fifth Amendment's double jeopardy protections "represent a fundamental ideal in our constitutional heritage." *Benton v. Maryland*, 395 U.S. 784, 797, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969). As a fundamental right, that protection is not subject to the restrictions of the general rule of procedural default and is not subject to waiver strictly because a defendant failed to object at trial. *See Marin v. State*, 851 S.W.2d 275, 278 (Tex. Crim.App.1993), *overruled on other grounds, Cain v. State*, 947 S.W.2d 262, 265 (Tex.Crim.App.1997). In order for a criminal defendant to relinquish his double jeopardy rights, he must take *some affir-*

mative action* that might be construed as a "waiver" of those rights. There is no evidence in the record that appellant did anything that could be interpreted as an affirmative waiver of his rights against cumulative punishments. Therefore, the Court of Appeals erred in suggesting that it was "appellant's burden to preserve, in some fashion, a double jeopardy objection at or before the time the charge [was] submitted to the jury." *Gonzalez v. State*, 973 S.W.2d 427, 431 (Tex.App.—Austin 1998). Furthermore, the Court of Appeals' holding that "as long as the *general verdict* of the jury can be reconciled in such a fashion that it does not implicate the double jeopardy clauses of the federal and state constitutions, then the convictions and punishments must stand," *id.* (emphasis in original), is contrary to the Supreme Court's decision in *Stromberg v. California*, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931). I would vacate the judgment of the appellate court and remand the case for that court to consider whether a conviction under the remaining two paragraphs of count one violated the Double Jeopardy Clause.

**I.**

The majority recites a brief description of the facts and procedural history of this case. *See ante*, at 640–41. Nevertheless, in order to further elucidate the parties' arguments, it is necessary to add some additional detail. Appellant was accused of entering the house of eighty-five year-old Lora Thurman and brutally attacking her with a crowbar. Count one of the indictment against appellant charged him with aggravated robbery and contained three paragraphs listing alternative aggravating manner and means. *See* Tex. Penal Code Ann. § 29.03 (Vernon 1994). Count two charged appellant with injury to an elderly person. *Id.* at § 22.04.

**23.** See *Casey v. State,* 828 S.W.2d 214, 218 (Tex.App.—Amarillo 1992, no pet.) (defendant "waived" double jeopardy claim by waiting until closing argument at guilt/innocence to raise it).

At trial, the jury was instructed on both aggravated robbery and injury to an elderly person. The jury charge set out the three alternate aggravating factors to the aggravated robbery count in the disjunctive. Appellant voiced no double jeopardy objection to the proposed charge. After deliberation, the jury returned a *general verdict* finding appellant guilty of both aggravated robbery and injury to an elderly person. The trial court assessed a life sentence for each offense.

On appeal, appellant argued that the two convictions were violative of his double jeopardy rights under the Fifth and Fourteenth Amendments to the United States Constitution. Specifically, appellant contended that, as alleged in the indictment, the aggravating allegations included in the aggravated robbery count punished the same conduct as the count involving injury to an elderly person. The Court of Appeals rejected appellant's argument and held that the two convictions were not jeopardy barred. *Gonzalez,* 973 S.W.2d at 429–31. The appellate court relied on *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) and *Parrish v. State,* 869 S.W.2d 352 (Tex. Crim.App.1994), in concluding that injury to an elderly person is not a lesser included offense of aggravated robbery as alleged in the *second paragraph* of count one of the indictment. *Gonzalez,* 973 S.W.2d at 430–31. However, the court did not analyze whether the first and third paragraphs of the aggravated robbery count implicated the Double Jeopardy Clause:

> Assuming without deciding that paragraphs one and three of the aggravated robbery count and count two (injury to an elderly person) do implicate the double jeopardy clauses of the federal and state constitutions, appellant's argument must still fail. We conclude that as long as the *general verdict* of the jury can be reconciled in such a fashion that it does not implicate the double jeopardy clauses of the federal and state constitutions, then the convictions and punishments must stand. We regard it as the appellant's burden to preserve, in some fashion, a double jeopardy objection at or before the time the charge is submitted to the jury. The record in this case is clear that no objection was made, and thus the jury's general verdict finding appellant guilty of both aggravated robbery and injury to an elderly person is proper under the circumstances.

*Id.* at 431 (citation omitted). In a footnote following this passage, the court limited the breadth of its language as it related to the preservation issue:

> By this comment, we do not mean to suggest that, absent objection, appellant is barred from a double jeopardy claim on appeal. We only mean to suggest that when a jury is charged in the disjunctive and required to return a *general verdict,* appellant must in some fashion preserve his contention that a general verdict would preclude him from raising a double jeopardy claim when at least one of the allegations in the disjunctive charge would not be jeopardy barred.

*Id.* at 431 n. 3. Based on the conclusion that it need only decide that *one* of the alternative paragraphs included in the aggravated robbery count was not "the same" as the offense of injury to an elderly person for double jeopardy purposes, the lower court affirmed appellant's conviction. *Id.*

**II.**

The Court of Appeals suggested that appellant forfeited his right to complain that he was subject to multiple punishments because he failed to "preserve, in some fashion, a double jeopardy objection at or before the time the charge [was] submitted to the jury." *Gonzalez,* 973 S.W.2d at 431.[1] Although the appellate

---

1. The State did not argue the issue of procedural default before the Court of Appeals. In

fact, the State does not assert that appellant forfeited his double jeopardy claim before this

court cited no authority for its conclusion, it apparently relied on the general rule that "the right to complain on appeal about most ... trial errors is ... contingent upon a specific pretrial or contemporaneous objection." *Ieppert v. State,* 908 S.W.2d 217, 219 (Tex.Crim.App.1995); *see also* Tex.R.App. P. 33.1(a).[2]

There are some fundamental rights, however, which "are not extinguished by inaction alone." *Marin v. State,* 851 S.W.2d 275, 278 (Tex.Crim.App.1993), *overruled on other grounds, Cain v. State,* 947 S.W.2d 262, 265 (Tex.Crim.App.1997). Rights of this type are not subject to the restrictions of the general rule of procedural default and may be asserted for the first time on appeal unless expressly waived. *Id.* at 280. In *Marin v. State,* this Court suggested that "our system may be thought to contain rules of three distinct kinds: (1) absolute requirements and prohibitions; (2) rights of litigants which must be implemented by the system unless expressly waived; and (3) rights of litigants which are to be implemented upon request." *Id.* at 279. The Court stated that most "of the myriad evidentiary and procedural rules comprising our system" are of the last type and therefore fell squarely within the scope of former Rule 52(a). *Id.* at 278. Nevertheless, some rights, including some constitutional ones, are properly located under the second identified category. Rights of this variety are not subject to forfeiture strictly because a defendant failed to object at trial:

> Some rights are widely considered so fundamental to the proper functioning of our adjudicatory process as to enjoy special protection in the system. A principle [sic] characteristic of these rights is that they cannot be forfeited. That is to say, they are not extinguished by inaction alone. Instead, if a defendant wants to relinquish one or more of them, he must do so expressly.

*Id.* at 278–79 (internal citations omitted). Therefore, a Texas appellate court must address the merits of a claim which is rooted in one the rights located in the second *Marin* category, unless expressly waived, even where the claim is brought for the first time on appeal. *See id.* at 279.

The second category carved out by the *Marin* Court is consistent with the teaching of various Supreme Court cases involving waiver of some fundamental constitutional rights. The Supreme Court has indicated that in order to waive such fundamental rights, the waiver must amount to an "intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). Moreover, when such fundamental rights are involved, a court must " 'indulge every reasonable presumption against waiver.' " *Id.* (quoting *Aetna Insurance Co. v. Kennedy,* 301 U.S. 389, 393, 57 S.Ct. 809, 811–12, 81 L.Ed. 1177 (1937)). The question we are faced with in the instant case is whether appellant's Fifth Amendment right to be free from cumulative punishments warrants similar treatment from the appellate courts. I would conclude that it does.

The Supreme Court has long recognized the fundamental nature of the Fifth Amendment's double jeopardy prohibition.

Court. To the contrary, the State urges that we *not* read this statement by the appellate court as holding that appellant is procedurally barred: "Whatever the meaning intended by the statement in the [appellate court's] opinion concerning the appellant's burden to preserve a double jeopardy objection before the charge in this case was read to the jury, the Court of Appeals did not hold that by failing to object the appellant forfeited his right to appeal on ground for [sic] double jeopardy." State's Brief at 8.

**2.** Rule 33.1(a) replaced former Tex.R.App. P. 52(a) in 1997. The relevant portion of Rule 33.1 does not alter the substance of former Rule 52(a), although it does make some semantic changes and divides the rule into numbered paragraphs. *See* Tex.R.App. P. 33 (Official Comment to 1997 Change). Thus the case law interpreting the old rule is applicable to the instant case.

See, e.g., Benton v. Maryland, 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969) (holding that bar against double jeopardy "represents a fundamental ideal in our constitutional heritage," and therefore applies against States through Fourteenth Amendment). Furthermore, the Court has recognized the presumption against waiver of a defendant's double jeopardy rights. The Court held in *Green v. United States*, 355 U.S. 184, 191–92, 78 S.Ct. 221, 225–26, 2 L.Ed.2d 199 (1957), that a defendant had not waived his constitutional rights under the Double Jeopardy Clause by making a successful appeal of an improper conviction for second degree murder. The Court indicated that "waiver" "connotes some kind of voluntary knowing relinquishment of a right." *Id.*, 355 U.S. at 191, 78 S.Ct. at 226 (comparing *Johnson, supra* ). Thus the Court said that it was "wholly fictional" to say that a defendant " 'chooses' to forego his constitutional defense of former jeopardy on a charge of murder in the first degree in order to secure a reversal of an erroneous conviction of the lesser offense." *Id.*, 355 U.S. at 192, 78 S.Ct. at 226. The Court's decision in *Green* indicates that in order for a defendant to relinquish his rights under the Double Jeopardy Clause, he must make some sort of explicit waiver of those rights. *See also Menna v. New York*, 423 U.S. 61, 62, 96 S.Ct. 241, 242, 46 L.Ed.2d 195 (1975) (per curiam) (holding double jeopardy claim was not "waived" by defendant's counseled plea of guilty);

*Schneckloth v. Bustamonte,* 412 U.S. 218, 237–38, 93 S.Ct. 2041, 2053, 36 L.Ed.2d 854 (1973) (citing *Green* for proposition that *Johnson* principles assessing effectiveness of waiver apply to double jeopardy rights).

Since *Green,* however, the Supreme Court has retreated somewhat from its suggestion that a defendant's "waiver" of his rights under the Double Jeopardy Clause necessarily requires that he make explicit reference to the abandonment of those *particular* Fifth Amendment rights. In fact, the Court has suggested that a conscious waiver of the *specific defense* of double jeopardy may not be necessary. *See United States v. Broce,* 488 U.S. 563, 573, 109 S.Ct. 757, 764, 102 L.Ed.2d 927 (1989) (holding defendants relinquished double jeopardy rights by pleading guilty to two separate indictments, thereby conceding guilt to two separate offenses). Nevertheless, the Court has continued to require *some affirmative action* on the part of the defendant inconsistent with that defendant's rights under the Double Jeopardy Clause.[3] *See, e.g., Ricketts v. Adamson,* 483 U.S. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987) (defendant breached plea agreement entered into knowingly and voluntarily that explicitly conditioned defendant's more lenient sentence on agreement to testify against co-defendants); *United States v. Scott,* 437 U.S. 82, 98–99, 98 S.Ct. 2187, 2197–98, 57 L.Ed.2d 65 (1978) (defendant successfully moved to dismiss indictment "on a basis unrelated to factual guilt

3. Had the Supreme Court been inclined to hold that double jeopardy rights were forfeited strictly by a failure to object at trial, it could have resolved a case like *Broce* far more easily. After all, the *Broce* defendants pleaded guilty to the two indictments without entering any form of double jeopardy objection. *Broce,* 488 U.S. at 566–67, 109 S.Ct. at 760–61 (suggesting Broce asserted *double jeopardy* defense only after it was successful in subsequent, similar case). The Court could have simply found that the failure to object at trial barred them from asserting their multiple punishments claim for the first time on collateral attack. Instead, the Court suggested that the affirmative relinquishment of those rights was implicit in the defendants'

voluntary and intelligent pleas of guilty: "Relinquishment derives not from any inquiry into a defendant's subjective understanding of the range of potential defenses, but from the admissions necessarily made upon entry of a voluntary plea of guilty." *Id.* at 573–74, 109 S.Ct. at 764. In other words, it was the affirmative legal and factual "admissions," inherent in the defendants' guilty pleas, that the *Broce* Court found dispositive. Even the Court's choice of operative verbs—using "relinquish" rather than "forfeit"—is significant inasmuch as it implies that an affirmative act was an essential ingredient in its analysis. *See, e.g., Marin,* 851 S.W.2d at 278–79 (noting different meanings of "forfeit" and "relinquish").

or innocence of the offense of which he is accused"); *Jeffers v. United States*, 432 U.S. 137, 152–53, 97 S.Ct. 2207, 2217–18, 53 L.Ed.2d 168 (1977) (plurality opinion) (defendant successfully opposed Government's motion to consolidate two offenses into one trial); *United States v. Dinitz*, 424 U.S. 600, 609–10, 96 S.Ct. 1075, 1080–81, 47 L.Ed.2d 267 (1976) (defendant successfully moved for mistrial). In other words, the key to assessing "waiver" in the double jeopardy context has continued to pivot on whether the defendant made an affirmative "choice" to forgo his constitutional rights.[4] In each case finding waiver, the Court has presumed that the defendant engaged in some form of rational calculus and determined that the benefits of waiver outweighed the detriments. *See, e.g., Dinitz*, 424 U.S. at 610, 96 S.Ct. at 1081 (emphasizing when defendant moves for mistrial he "might well consider an immediate new trial a preferable alternative to the prospect of a probable conviction followed by an appeal, a reversal of the conviction, and a later retrial"). This has led the Court to observe, in the context of a defendant's motion for mistrial, that "[t]he important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of [prejudicial prosecutorial or judicial] error." *Id.*, 424 U.S. at 609, 96 S.Ct. at 1080.

Whatever criteria the Court has used to assess the effectiveness of a "waiver" of a

defendant's double jeopardy rights, the Court has indicated that silence does *not* waive a defendant's rights against cumulative punishments. In *Jeffers v. United States*, 432 U.S. at 154, 97 S.Ct. at 2218, the Court concluded that the appellant could not complain on appeal that he was subject to multiple prosecutions in violation of the Double Jeopardy Clause after he successfully challenged the Government's motion to consolidate the offenses of conspiracy and continuing-criminal-enterprise into a single trial. Although the Court found that Jeffers had implicitly waived his multiple prosecutions claim, it suggested that he had done nothing to waive his cumulative punishment claim. The Court recognized that the issue of cumulative punishments was not raised during either trial. *See Id.*, 432 U.S. at 154–55, 97 S.Ct. at 2218 (indicating that both parties, throughout the proceedings in the trial court, appeared to have assumed that no cumulative punishment problem was present in the case). Nevertheless, the Court addressed the merits of Jeffers' multiple punishment argument and ultimately concluded that Congress did not intend to impose cumulative penalties under the two statutes. *Id.*, 432 U.S. at 157, 97 S.Ct. at 2219–20. The Court's willingness to address the multiple punishment claim absent an appropriate objection in the trial court indicates that some sort of affirmative action was necessary to waive that particular portion of the Double Jeopardy Clause's protection.

---

**4.** At least in the context of double jeopardy rights, the term "waiver" has not maintained the same meaning as was initially ascribed to it in *Johnson v. Zerbst*, 304 U.S. at 464, 58 S.Ct. at 1023 (indicating "waiver" involved "an intentional relinquishment of a known right or privilege"). In this sense, double jeopardy may be different from the Sixth Amendment rights to counsel and to jury trial. With respect to the *specific constitutional defense* of multiple punishments, no "conscious waiver" is necessary where those rights are otherwise relinquished by a valid guilty plea. *See Broce*, 488 U.S. at 573, 109 S.Ct. at 764. Nevertheless, as noted above, the Supreme

Court has continued to require some kind of *act* on the part of a defendant that could be interpreted as an affirmative relinquishment before it will consider those rights abandoned. In *Broce*, that affirmative act involved pleading guilty to two facially distinct indictments and the concessions implicit in that plea. Rather than confront this reality, however, the majority misrepresents the argument by saying that I am advocating "an affirmative, *Johnson v. Zerbst* 'waiver' of double jeopardy rights." *Ante*, at 645. This is surely "setting up a straw man and then knocking it down." *Reynolds v. State*, 4 S.W.3d 13, 16 (Tex.Crim.App.1999).

Based on the Supreme Court's decision in *Jeffers,* this Court has previously indicated that it would address a cumulative punishment claim for the first time on appeal that had not been affirmatively waived. *See Phillips v. State,* 787 S.W.2d 391, 393 (Tex.Crim.App.1990); *see also Ex parte Birdwell,* 7 S.W.3d 160, 163–64 (Tex. Crim.App.1999) (holding that while guilty plea did not waive double jeopardy protections, submitting to second trial in exchange for more lenient sentence did amount to waiver); *Ex parte Hawkins,* 6 S.W.3d 554, 555 n. 1 (Tex.Crim.App.1999) (Meyers, J., concurring) (suggesting that "in order to 'waive' his rights under the Double Jeopardy Clause within the meaning of *Marin,* a defendant must take *some affirmative action* inconsistent with those constitutional rights") (emphasis in original); *Disheroon v. State,* 687 S.W.2d 332, 336 (Tex.Crim.App.1985) (Teague, J., concurring) (indicating that given the "fundamental nature of the double jeopardy clauses of the respective Constitutions,

jeopardy can be raised for the first time on appeal"). By the same token, this Court has repeatedly been willing to address an unwaived claim of double jeopardy brought for the first time in a writ petition. *See, e.g., Ex parte Ervin v. State,* 991 S.W.2d 804 (Tex.Crim.App.1999); *Ex parte Evans,* 530 S.W.2d 589, 591 (Tex.Crim.App.1975).[5] This approach is consistent with case law from the Fifth Circuit Court of Appeals. *See United States v. Devine,* 934 F.2d 1325, 1342–43 (5th Cir.1991). In *Devine,* the Fifth Circuit panel found "no evidence of any affirmative act by [the appellant] that might be construed as a voluntary and knowing waiver of his constitutional right not to receive multiple punishments for the same offense." *Id.,* at 1343 (comparing *Jeffers,* 432 U.S. at 153, 97 S.Ct. at 2217). The Fifth Circuit therefore concluded that the absence of a double jeopardy objection in the trial court did not waive that issue for the purposes of appellate review. *Id.*[6] Therefore, consistent with *Jeffers,* the Fifth Circuit and with authority from this

**5.** Only last month, this Court handed down its opinion in *Ex parte Hawkins,* 6 S.W.3d 554 (Tex.Crim.App.1999). In *Hawkins,* a majority of this Court was willing to address the substantive double jeopardy issue presented for the first time on collateral attack. *Id.* Not only did the habeas applicant in that case fail to make a double jeopardy objection in the trial court, he pleaded guilty to two facially distinct indictments. By entering a voluntary and intelligent plea of guilty, the applicant should have been considered to have affirmatively relinquished his protection against multiple punishments under the rationale presented in *Broce. See id.,* at 563 (Meyers, J., concurring). But the majority of the *Hawkins* Court, including all of the judges who vote in favor of procedural default in the instant case, saw fit to address the merits. This is inconsistency at its worst. How can we possibly bar a defendant from asserting his constitutional double jeopardy rights where, as here, he has done nothing that could be interpreted as a "waiver" of those rights when a habeas applicant like Hawkins has his claim addressed on the merits in the face of clear precedent stating that his claim has been waived?

Equally perplexing is the Court's recent opinion in *Ex parte Birdwell,* 7 S.W.3d 160

(Tex.Crim.App.1999). In that case, all of the judges in today's majority acknowledged that a guilty plea does not, by itself, waive a double jeopardy claim. *Id.,* at 163–64 (citing *Menna,* 423 U.S. 61, 96 S.Ct. 241). Instead, that Court held that the applicant only waived his double jeopardy rights by subjecting himself to a second trial in exchange for a more lenient sentence. *Id.,* at 164. We presumed that the benefits inherent in the plea arrangement outweighed those of an appeal based on the Double Jeopardy Clause. *Id.* Thus, in order to amount to a legitimate waiver, this Court required some rational choice on the part of the defendant to forgo his rights under the Fifth Amendment.

**6.** The *Devine* Court distinguished its previous decision in *Grogan v. United States,* 394 F.2d 287 (5th Cir.1967), in which it held the appellant had waived his multiple prosecutions claim. The court noted because that case involved successive trials, "the constitutional error presented itself at the commencement of the second trial. Here, however, the error occurred in the same trial and first manifested itself when the district court failed to instruct the jury that it could not convict [the appellant] of both conspiracy and conducting a criminal enterprise." *Devine,* 934 F.2d at 1343.

Court, appellant's constitutional right to be free from cumulative punishments is properly classified in the second *Marin* category.[7]

In the instant case, there is no evidence in the record that appellant did anything that could be construed as an affirmative waiver of his rights against cumulative punishments. The Court of Appeals erred in holding that it was necessary for appellant to object before the jury charge was submitted in order to preserve his multiple punishment claim for appeal. Appellant's second ground for review should be sustained.[8]

**III.**

Having concluded that appellant did not waive his cumulative punishments claim, it is necessary to examine the Court of Appeals' conclusion that no jeopardy problem is presented where multiple aggravating factors are alleged, the jury returns a general verdict and *one* of the aggravating factors can be reconciled with the remaining counts in such a way as to not implicate the Double Jeopardy Clause.[9] It has been settled for more than half a century that where a provision of the Constitution forbids conviction on a particular ground, the constitutional guarantee is violated by

7. In departing from the structure of *Marin*, the majority crafts its new rule for waiver of constitutional double jeopardy protection out of whole cloth. The majority writes,

> [t]he overriding principles expressed by [Texas] case-law [is] that, because of the fundamental nature of double jeopardy protections, a double jeopardy claim may be raised for the first time on appeal or even for the first time on collateral attack when the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record and when enforcement of usual rules of procedural default serves no legitimate state interests.

*Ante*, at 642–43 (footnotes omitted). But even under the majority's new rule, appellant should have his claim addressed on the merits. Appellant's claim meets the first prong of the majority's test inasmuch as a determination of whether there actually was a violation of the Double Jeopardy Clause can be made on the face of the current record. Unlike in *Shaffer*, where no evidence was presented to substantiate the appellant's claim of former jeopardy, the Court of Appeals had all the information it needed in the current record to conduct a proper constitutional analysis. Moreover, the fact that the jury returned a general verdict does not preclude a *Blockburger*-type analysis on these facts—*all* of the paragraphs included in count one must be constitutionally sound to amount to a valid conviction. *See infra*, Part III. Furthermore, by addressing the merits of appellant's claim in the instant case, we would not offend any "legitimate state interest" inherent in the rules of procedural default. First, "the two convictions were in the same court, on the same day, before the same judge, and were based on the same evidence." *Shaffer v. State*, 477 S.W.2d 873, 876 (Tex.Crim.App. 1971). In that regard, the trial judge had all of the evidence he needed to determine

whether appellant's double jeopardy rights were implicated. Second, even if appellant was granted relief on his multiple punishment claim on appeal, he would not be entitled to a new trial. Instead, the proper remedy in that situation is to vacate one of the multiplicitous sentences. *See Ball v. United States*, 470 U.S. 856, 864–65, 105 S.Ct. 1668, 1673–74, 84 L.Ed.2d 740 (1985); *Landers v. State*, 957 S.W.2d 558 (Tex.Crim.App.1997). Thus, the majority's suggestion that by failing to follow the rules of procedural default, appellant could force the state to "an unnecessary retrial" is unfounded.

8. By pouring cases like this out under the guise of procedural default, the majority does more harm to the "legitimate state interests" in finality and efficiency than it realizes. Appellant may simply couch his claim as ineffective assistance of counsel and resubmit his argument in a writ application. If appellant successfully prosecutes this claim, the remedy would be a new trial. *See* Tex.Crim. Proc.Code Ann. art. 44.29(a) (Vernon Supp.1999). Such a remedy would be far more severe than simply addressing a meritorious cumulative punishment claim on the merits and vacating one of the redundant sentences.

9. The Court concludes that appellant is procedurally barred from asserting his multiple punishment claim and therefore determines that it is "unnecessary" to reach appellant's first ground for review. *Ante*, at 642–43. Nevertheless, the majority cannot restrain themselves from writing a four page commentary on why appellant would fail on this ground as well. *See id.*, at 641–42. This is, of course, dicta. *See, e.g., Reynolds*, 4 S.W.3d at 16 (describing "dicta" as language "unnecessary to [a] decision in [a] case").

a general verdict that may have rested on that ground. *Stromberg v. California,* 283 U.S. 359, 367–68, 51 S.Ct. 532, 535, 75 L.Ed. 1117 (1931); *see also Griffin v. United States,* 502 U.S. 46, 53, 112 S.Ct. 466, 471, 116 L.Ed.2d 371 (1991); *Bachellar v. Maryland,* 397 U.S. 564, 570–71, 90 S.Ct. 1312, 1315–16, 25 L.Ed.2d 570 (1970); *Leary v. United States,* 395 U.S. 6, 31–32, 89 S.Ct. 1532, 1545–1546, 23 L.Ed.2d 57 (1969); *Street v. New York,* 394 U.S. 576, 585–588, 89 S.Ct. 1354, 1362–64, 22 L.Ed.2d 572 (1969); *Terminiello v. Chicago,* 337 U.S. 1, 5, 69 S.Ct. 894, 896, 93 L.Ed. 1131 (1949); *Thomas v. Collins,* 323 U.S. 516, 529, 65 S.Ct. 315, 322, 89 L.Ed. 430 (1945); *Williams v. North Carolina,* 317 U.S. 287, 291–92, 63 S.Ct. 207, 210, 87 L.Ed. 279 (1942). This rule has generally become known as "the rule of the *Stromberg* case." *Williams,* 317 U.S. at 292, 63 S.Ct. at 210.

In *Stromberg v. California,* the appellant was convicted under a California statute which made it a felony to display "any flag, badge, banner, or device ... as a sign, symbol or emblem of opposition to organized government or as an invitation or stimulus to anarchistic action or as an aid to propaganda that is of a seditious character." *Stromberg,* 283 U.S. at 360–61, 51 S.Ct. at 532–33. The information charged appellant in the conjunctive with violating each of the three purposes that the statute condemned. *Id.* The jury charge, however, tracked the language of the statute and treated the described purposes disjunctively, instructing the jury to convict if they found that the flag was displayed for any one of the three purposes named. *Id.,* 283 U.S. at 363, 51

S.Ct. at 533. The jury returned a general verdict of guilty. *Id.,* 283 U.S. at 367–68, 51 S.Ct. at 535. The California Court of Appeals held that while it doubted the constitutionality of the first clause of the statute under the First Amendment, the remaining clauses were constitutional and the conviction was therefore valid. *Id.* The Supreme Court disagreed:

> As there were three purposes set forth in the statute, and the jury was instructed that their verdict might be given with respect to any one of them, independently considered, it is impossible to say under which clause of the statute the conviction was obtained. If any one of these clauses, which the state court has held to be separable, was invalid, it cannot be determined upon this record that the appellant was not convicted under that clause.... It follows that instead of being permissible to hold, with the state court, that the verdict could be sustained if any one of the clauses of that statute were found to be valid, the necessary conclusion from the manner in which the case was sent to the jury is that, if any of the clauses in question is invalid under the Federal Constitution, the conviction cannot be upheld.

*Id.* 283 U.S. at 368, 51 S.Ct. at 535. The Court went on to conclude that the first clause of the statute was indeed invalid under the federal constitution and that the conviction, "which so far as the record disclose[d] may have rested upon that clause exclusively, must be set aside." *Id.,* 283 U.S. at 370, 51 S.Ct. at 536.

The "rule of the *Stromberg* case" applies here.[10] The fact that the instant case involves the application of the Double Jeop-

10. The State conceded as much at oral argument when it said, "in all candor I doubt—have some doubt—that the Court of Appeals' opinion regarding, where they say that we will assume that two of the counts are jeopardy barred, but since another one is not, the conviction gets affirmed. I think under *Stromberg v. California,* in which ... the U.S. Supreme Court said that if one of the alternatives submitted in an indictment is unconstitutional, then a conviction cannot stand. We

are used to dealing with the sufficiency of the evidence rule—that is, if any of the alternatives presented, if under any of the alternatives there is sufficient evidence to sustain a conviction, the conviction will be sustained. But when you are talking constitutional issues, I am not sure you can go that way. And the U.S. Supreme Court in *Stromberg v. California* does certainly indicate that you may not be able to."

ardy Clause rather than the First Amendment is of no consequence. The Supreme Court has not hesitated to extend the *Stromberg* rule to contexts outside of the First Amendment where a general verdict may have rested upon an unconstitutional ground. *See, e.g., Leary,* 395 U.S. at 31, 89 S.Ct. at 1545–46 (Fifth Amendment Due Process Clause); *Williams,* 317 U.S. at 292, 63 S.Ct. at 210 (Full Faith and Credit Clause); *Cramer v. United States,* 325 U.S. 1, 65 S.Ct. 918, 89 L.Ed. 1441 (1945) (Treason Clause of Article III, § 3).[11] Furthermore, when the Court recently reaffirmed the viability of the *Stromberg* rule, it did so using language that was in no way dependant on the First Amendment: "[The] language, and the holding of *Stromberg,* do not necessarily stand for anything more than the principle that, *where a provision of the Constitution* forbids conviction on a particular ground, the constitutional guarantee is violated by a general verdict that may have rested on that ground." *Griffin,* 502 U.S. at 53, 112 S.Ct. at 471 (emphasis added); *see also Zant v. Stephens,* 462 U.S. 862, 881, 103 S.Ct. 2733, 2744–45, 77 L.Ed.2d 235 (1983) ("[A] general verdict must be set aside if the jury was instructed that it could rely on any two or more independent grounds, and any one of those grounds is insufficient, because the verdict may have rested exclusively on the insufficient ground").[12]

11. In a manner reminiscent of trying to force a square peg into a round hole, the majority attempts to reconcile these cases with its speech-and-conduct-specific reading of *Stromberg.* For example, the majority suggests in a parenthetical that the Supreme Court could have held that the conviction in *Williams* rested on "constitutionally protected conduct." *See ante,* at 642. This interpretation of *Williams,* however, is at odds with the Supreme Court itself. In *Griffin,* the Court described *Williams* as finding that the conviction may have rested on grounds which "violated the Full Faith and Credit Clause." *Griffin,* 502 U.S. at 54, 112 S.Ct. at 471. The *Griffin* Court then went on to quote the language in *Williams* which explained why the *Stromberg* rule applied:

"[T]he verdict of the jury for all we know may have been rendered on that [unconstitutional] ground alone, since it did not specify the basis on which it rested.... No reason has been suggested why the rule of the *Stromberg* case is inapplicable here. Nor has any reason been advanced why the rule of the *Stromberg* case is not both appropriate and necessary for the protection of the rights of the accused. To say that a general verdict of guilty should be upheld though we cannot know that it did not rest on the invalid constitutional ground on which the case was submitted to the jury, would be to countenance a procedure which would cause a serious impairment of constitutional rights."

*Id.* (quoting *Williams,* 317 U.S. at 292, 63 S.Ct. at 210) (alterations in original). Nowhere does the Court refer to the rule in *Williams* as involving "constitutionally protected conduct." Rather, the rule is geared towards protecting an accused when there is no way to determine whether a conviction rested on an "invalid constitutional ground."

12. The majority points out that Chief Justice Warren's dissenting opinion in *Street* stated the *Stromberg* rule more narrowly. *See ante* at 642 & n. 6. However, the majority misrepresents how the *Stromberg* rule was stated by a majority of the Supreme Court in that case. Specifically, it notes that Chief Justice Warren's dissent suggested that "the teaching of *Stromberg* is that, if there is any possibility the general verdict below rests on speech or conduct entitled to constitutional protection, then the conviction must be reversed." *Id.* at 642 (quoting *Street,* 394 U.S. at 601, 89 S.Ct. at 1370 (Warren, C.J., dissenting)). It then states that "[t]he majority opinion [in *Street*] and Chief Justice Warren's dissenting opinion agreed on the 'teaching of *Stromberg,*'" and that they only disagreed about whether flag-burning was protected conduct. *Ante,* at 642 n. 6. Even a cursory reading of *Street,* however, shows this not to be the case. After reciting the facts of *Stromberg,* the *Street* majority noted that the Court had "consistently followed" the *Stromberg* rule. *Street,* 394 U.S. at 586–87, 89 S.Ct. at 1362. It then noted that in *Williams* the Court "again held itself compelled to reverse a conviction based upon a general jury verdict when the record failed to prove that the conviction was not founded upon a theory *which could not constitutionally support a verdict.*" *Id.* (emphasis added). The Court then quoted the operative rule in *Williams:* "To say that a general verdict of guilty should be upheld *though we cannot know that it did not rest on the invalid constitutional ground* ... would be to countenance a procedure which would cause a serious impairment of constitutional rights." *Id.*

The Court has even gone so far as to hold that the rationale of *Stromberg* applies where one of the possible bases for conviction was *legally*, rather than constitutionally, infirm. *See Yates v. United States*, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957) (reversing general guilty verdict where one of possible bases for conviction was legally inadequate because of statutory time bar).

The rationale of *Stromberg*, which has been explained in cases like *Griffin*, applies whether the allegation of unconstitutionality has its origins in the First Amendment or in the Double Jeopardy Clause. In *Griffin*, the Court held that if there was sufficient evidence to support any object of a multiple object conspiracy charge, even if the evidence was lacking for the other objects, a conviction on the general verdict could stand. In reaching its conclusion, the Court distinguished *Stromberg*, explaining:

> Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law.... Quite the opposite is true, however, when they have been left the option of relying upon a factually inadequate theory, since jurors *are* well equipped to analyze the evidence.

*See Griffin*, 502 U.S. at 59, 112 S.Ct. at 474 (emphasis in original). The same rationale applies here. We obviously cannot expect the jury, in the course of its deliberations, to conduct a *Blockburger*-type analysis while it debates the charges on which it might convict. While we are willing to assume that the jury properly returned a general verdict based on the ground which

is adequately supported by the evidence, *see, e.g., Kitchens v. State*, 823 S.W.2d 256, 258 (Tex.Crim.App.1991), "when the jury is presented with two counts, one of which is invalid as a matter of law, and it is impossible to determine under which count·the jury convicted, we are not willing to assume that the jury ignored the invalid count and convicted under the valid count." *Ex parte Drinkert*, 821 S.W.2d 953, 955 (Tex.Crim.App.1991). Therefore, the Court of Appeals erred in concluding that "as long as the *general verdict* of the jury can be reconciled in such a fashion that it does not implicate the double jeopardy clauses of the federal and state constitutions, then the convictions and punishments must stand." *Gonzalez*, 973 S.W.2d at 431.

## IV.

I would vacate the judgment of the Court of Appeals and remand to that court to consider whether a conviction under the remaining two paragraphs of count one violated the Double Jeopardy Clause.[13] I dissent.

---

(quoting *Williams*, 317 U.S. at 292, 63 S.Ct. at 210) (emphasis added). The *Stromberg* rule is stated by the *Street* Court more broadly than the majority implies. This is especially so since *Williams* itself applied *Stromberg* in a context outside of the First Amendment (as did both *Cramer* and *Yates*—both relied on by the majority in *Street* ). However, even disregarding the fact that the rule the majority wishes to apply was stated in a *dissenting opinion*, there is no apparent reason, and the

majority provides none, *why* the rationale of *Stromberg* is specific to the First Amendment.

13.  I note, as the majority does, that TEX. PENAL CODE ANN. § 22.04(h) (Vernon 1994), may affect appellant's cumulative punishment claim. However, the substantive double jeopardy issue is not before us. Instead, the Court of Appeals should consider on remand what effect, if any, that provision may have on appellant's double jeopardy argument.