COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-08-165-CR

 

 

EDDIE DON PINKSTON, JR.                                                   APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM THE 371ST
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I.      Introduction








Appellant Eddie Don Pinkston, Jr. appeals his
convictions and sentences for aggravated assault with a deadly weapon and
aggravated robbery with a stick used as a deadly weapon.  In two points, Appellant challenges the legal
and factual sufficiency of the aggravated robbery conviction and argues that
his convictions violate double jeopardy. 
We modify the judgment in part and affirm it as modified.

II.     Factual and procedural
background

On May 19, 2007, Rene Rios went to the store to
purchase a long-distance phone card and took his neighbor, Appellant, with
him.  When Rios purchased the card, he
had approximately $400 in his wallet, in twenty dollar increments.  Rios testified that Appellant was present
during the purchase and in a position to see the money in Rios=s
wallet.

Rios and Appellant returned to Rios=s
house.  Rios testified that he was
talking to Appellant outside when Asomebody
hit me from the back, I turned and then I received the other hit in the face.@  Rios stated that he did not see the object
used to hit him but knew it was not someone=s hand
because the object was very hard.  Rios
stated that Appellant and two other individuals tried to obtain his billfold
while he was running away from them toward the back of his house.  He testified that he could feel their hands
trying to Apull at his billfold@ inside
his back pocket.[2]  Rios testified that his major injury was near
his right eye.








After the attack, Officer Mason Fincher arrived
at the scene.  Officer Fincher stated
that Rios had a large laceration on the back of his head and a large swelling
to the right side of his face.  He
testified that he was not sure if Rios was Ahit so hard
that it [] had split the skin open@ or if
Rios had been Ashot near the eye.@  Officer Fincher stated that he had asked Rios
questions through his sister, Theresa, because Rios did not speak English.  Theresa told him that the suspect=s name
was AEric@ who
lived in the Pinkston home next to Rios=s house.

Officer Fincher testified that he had called for
an ambulance because Rios=s injuries were extensive,
causing him to Aslip[] in and out of
consciousness.@ 
Officer Fincher stated that Rios=s
injuries were severe enough to put him in fear that Rios could Aexpire
at that point.@ 
Officer Fincher assumed that the suspect, AEric,@ was
actually Appellant and retrieved a mugshot to show Theresa, who confirmed AEric@ was in
fact AEddie
Pinkston.@ 
Officer Fincher then went to the hospital and took photographs of Rios=s
injuries, which included a laceration near Rios=s eye
and the laceration on the back of Rios=s head.








Rios testified that he stayed in the hospital for
Atwo or
three days@ and that doctors surgically
attached metal plates to the bone near his eye.[3]  After Rios=s
surgery, Detective B.K. McHorse spoke with him through an interpreter, Robert
Vargas.  Detective McHorse testified that
he provided a photo spread, and Rios identified Appellant out of six
individuals with similar facial features.  Detective McHorse wrote the original warrant
and presented it to the judge; Detective Billy Randolph took over the rest of
the investigation.

Police arrested Appellant on June 22, 2007.  On June 26, 2007, Detective Randolph
interviewed Appellant.  In the interview,
Appellant waived his Miranda rights and discussed the activities he had
participated in on May 19, 2007. 
Appellant initially denied any knowledge of the attack on Rios.  Appellant then admitted that Rios spoke with
him around 8 or 9 o=clock that night and that
Appellant Awent and got [powder] cocaine
for him.@  Appellant stated that he Acalled
his partner,@ who brought the cocaine.  Appellant said that Rios paid his friend, not
him, for the cocaine and it was worth Atwenty
to thirty dollars.@[4]








Appellant eventually admitted in the interview
that he saw the confrontation with Rios around midnight and that Ait was
over drugs.@ 
Appellant did not initially identify the other two participants of the
attack but then stated one of the men was named AWal-Mart@ and the
other individual was the friend who brought the cocaine.  Appellant then told Detective Randolph that
there was no robbery and that Aif
anything, [he] assaulted [Rios].@  Immediately after this statement, Appellant
said that this Awas a dope thing@ and Ahe didn=t want
to give me my money.@ 
Appellant told Detective Randolph that he had hit Rios once or twice
with a stick.  When Detective Randolph
stated that Rios=s injuries were not consistent
with the use of a stick, Appellant stated that the weapon he had used was more
akin to a Atwo-by-four@ piece
of wood.  Appellant said that he left
after the attack ended.

A grand jury indicted Appellant for aggravated
robbery and aggravated assault.  The
indictment stated that Appellant

did then and there
intentionally or knowingly, while in the course of committing theft of property
and with intent to obtain or maintain control of said property, cause bodily
injury to another, Rene Rios, by hitting him with a stick, and the defendant
used or exhibited a deadly weapon, to-wit: a stick, that in the manner of its
use or intended use was capable of causing death or serious bodily injury.

 








Count two: and it is
further presented in and to said court that the defendant in the county of
Tarrant and state aforesaid on or about the 19th day of May, 2007, did
intentionally or knowingly cause bodily injury to Rene Rios by hitting him with
a stick, and the defendant did use or exhibit a deadly weapon during the commission
of the assault, to wit: a stick, that in the manner of its use or intended use
was capable of causing death or serious bodily injury.

 

After a bench trial, the court found Appellant
guilty of both aggravated robbery and aggravated assault.  The trial court sentenced Appellant to thirty
years=
imprisonment for both convictions, with the sentences running concurrently.

III.     Legal and factual
sufficiency challenge

In his first point, Appellant argues that the
evidence at trial was legally and factually insufficient to prove that he was
in the course of committing a theft or had intent to obtain and maintain
control of Rios=s property when he assaulted
Rios.

A.     Legal
sufficiency standard of review

In reviewing the legal sufficiency of the
evidence to support a conviction, we view all of the evidence in the light most
favorable to the prosecution in order to determine whether any rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235
S.W.3d 772, 778 (Tex. Crim. App. 2007).








The trial judge, when sitting as the sole trier
of fact, is the exclusive judge of the credibility of the witnesses and the
weight to be given to their testimony.  Joseph
v. State, 897 S.W.2d 374, 376 (Tex. Crim. App. 1995).  Thus, when performing a legal sufficiency
review, we may not re-evaluate the weight and credibility of the evidence and
substitute our judgment for that of the factfinder.  Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).  Instead, we Adetermine
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.@ 
Hooper v. State, 214 S.W.3d 9, 16B17 (Tex.
Crim. App. 2007).  We must presume that
the factfinder resolved any conflicting inferences in favor of the prosecution
and defer to that resolution.  Jackson,
443 U.S. at 326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at 778.

B.     Factual
sufficiency standard of review








When reviewing the factual sufficiency of the
evidence to support a conviction, we view all the evidence in a neutral light,
favoring neither party.  Neal v.
State, 256 S.W.3d 264, 275 (Tex. Crim. App. 2008), cert. denied, 129
S. Ct. 1037 (2009); Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim.
App. 2006).  We then ask whether the
evidence supporting the conviction, although legally sufficient, is nevertheless
so weak that the factfinder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
factfinder=s determination is manifestly
unjust.  Lancon v. State, 253
S.W.3d 699, 704 (Tex. Crim. App. 2008); Watson, 204 S.W.3d at 414B15,
417.  To reverse under the second ground,
we must determine, with some objective basis in the record, that the great
weight and preponderance of all the evidence, though legally sufficient,
contradicts the judgment.  Watson,
204 S.W.3d at 417.








In determining whether the evidence is factually
insufficient to support a conviction that is nevertheless supported by legally
sufficient evidence, it is not enough that this court Aharbor a
subjective level of reasonable doubt to overturn [the] conviction.@  Id. 
We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently.  Id. 
We may not simply substitute our judgment for the factfinder=s.  Johnson v. State, 23 S.W.3d 1, 12
(Tex. Crim. App. 2000); Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim.
App. 1997).  Unless the record clearly
reveals that a different result is appropriate, we must defer to the trial
court=s
determination of the weight to be given contradictory testimonial evidence
because resolution of the conflict Aoften
turns on an evaluation of credibility and demeanor.  Johnson, 23 S.W.3d at 8.  Thus, unless we conclude that it is necessary
to correct manifest injustice, we must give due deference to the factfinder=s
determinations, Aparticularly those
determinations concerning the weight and credibility of the evidence.@  Id. at 9.

C.     Applicable
law

The State is required to prove every element of
an offense beyond a reasonable doubt.  See
Tex. Penal Code Ann. ' 2.01 (Vernon 2003).  The penal code describes robbery under
section 29.02 as, 

(a) A person commits an
offense if, in the course of committing theft as defined in Chapter 31[5]
and with intent to obtain or maintain control of the property, he:

 

(1) intentionally,
knowingly, or recklessly causes bodily injury to another; or

 

(2) intentionally or
knowingly threatens or places another in fear of imminent bodily injury or
death.

 

Id. ' 29.02(a) (Vernon
2003).  

 








Penal code section 29.01 defines the phrase Ain the
course of committing theft@ as Aconduct
that occurs in an attempt to commit, during the commission, or in immediate
flight after the attempt or commission of theft.@  See id. ' 29.01
(Vernon 2003).  Thus, proof of a completed
theft is not required to establish robbery. 
Wolfe v. State, 917 S.W.2d 270, 275 (Tex. Crim. App. 1996), cert.
denied, 544 U.S. 1037; see also Purser v. State, 902 S.W.2d
641, 647 (Tex. App.CEl Paso 1995, pet. ref=d)
(stating that the actual commission of theft Ais not a
prerequisite@ for robbery, as the Agravamen
of robbery is the assaultive conduct and not the theft@), cert.
denied, 525 U.S. 838 (1998).

Under section 29.03, aggravated robbery occurs
when a person commits robbery as defined in section 29.02 and (1) causes
serious bodily injury to another or (2) uses or exhibits a deadly weapon.  See id. ' 29.03.

D.     Legal
sufficiency analysis

In this case, the State provided evidence of
Appellant=s acts while in the course of
committing theft.  The State offered
Appellant=s recorded interview, which
revealed that Appellant had completed a drug transaction with Rios earlier that
day and that Rios may or may not have paid him for the cocaine.  Although Appellant denied robbing Rios,
Appellant stated that the confrontation was Aover
drugs,@ that he
assaulted Rios with a Atwo-by-four@ sized
stick, and that Rios Adidn=t want
to give [him] [his] money.@[6]








The State also offered testimony from the sole
witness of the attack, Rios, who confirmed that Appellant was speaking to him
when he was hit from behind by two individuals. 
Rios stated that as he was running away, he could feel Appellant and the
two other men[7]
Ascreaming
one to another@ and Apulling,
trying to get the billfold@ located
inside of Rios=s back pocket.  Although Rios stated that Appellant was
unable to obtain the wallet, his alleged acts in attempting to grab Rios=s wallet
were sufficient to establish he was in the course of committing theft and had
intent to obtain and maintain control of the property under the statute.  See Tex. Penal Code Ann. '' 29.01,
29.02; Wolfe, 917 S.W.2d at 275, Huerta v. State, No.
13-05-00272-CR, 2007 WL 2215952, at *2 (Tex. App.CCorpus
Christi Dec. 12, 2007, pet. ref=d) (mem.
op., not designated for publication) (stating that Athe jury
could rationally infer that appellant was attempting to steal [the victim=s]
wallet, although he was prevented from doing so by [the victim=s]
flight@).








Viewing the evidence in a light most favorable to
the prosecution, the trial court could have found beyond a reasonable doubt
that, Ain the
course of committing [a] theft@ and Awith
intent to obtain [and] maintain control@ of Rios=s
property, Appellant intentionally or knowingly caused bodily injury to Rios
when he used a deadly weapon to hit Rios. 
See Tex. Penal Code Ann. '' 29.02(a)(1),
29.03(a)(2).  We hold that the evidence
is legally sufficient to support the trial court=s
judgment.  See Jackson, 443 U.S.
at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.

E.     Factual
sufficiency analysis

Appellant contends that the evidence is factually
insufficient to support the conviction because the State only produced one
witness who actually witnessed the incident, Rene Rios, the victim.  Appellant urges that Rios=s
testimony was Aspeculative at best@ and his
memory had Asignificant gaps@ that
affected his credibility.  Rios admitted
that he had trouble remembering certain events; however, he was able to
describe details surrounding the attack, including his trip to the store with
Appellant, his brief conversation with Appellant prior to the attack, the
sensation of the object that hit his head, and the Apulling@ at his
billfold pocket as he fled from the attack. 
See Aguilar v. State, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971)
(stating that a conviction may be supported by testimony of only one
witness).  It was the sole responsibility
of the trial judge as trier of fact to believe or not believe Rios.








Rios=s testimony
and Appellant=s statement that were admitted
into evidence and played for the court, together with Detective Randolph=s and
Officer Fincher=s testimonies, allowed the trial
court to determine that Appellant=s
conduct in participating in the attack and in his attempt to take Rios=s
billfold fell within the statutory definitions of acting Ain the
course of committing theft@ and Awith
intent to obtain [and] maintain control of. . .  property.@  See Tex. Penal Code Ann. '' 29.01,
29.02(a).

Viewing the evidence in a neutral light, we
cannot say that the evidence is so weak that the trial court=s
determination that Appellant committed aggravated robbery through his actions
in the course of committing a theft and with intent to obtain and maintain
control of property is clearly wrong or manifestly unjust.  We also cannot say that the conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
trial court=s determination is unjust.  See Lancon, 253 S.W.3d at 704; Watson,
204 S.W.3d at 414B15, 417.  We therefore hold that the evidence is
factually sufficient to support the trial court=s
judgment.  Because the evidence is both
legally and factually sufficient, we must overrule Appellant=s first
point.

IV.    Double Jeopardy

In his second point, Appellant argues that the
trial court erred by convicting him for both aggravated robbery and aggravated
assault.  The State concedes that the
trial court violated double jeopardy prohibitions, and we agree.








A.     Applicable
law

The Double Jeopardy Clause of the United States
Constitution provides that no person shall be subjected to twice having life or
limb in jeopardy for the same offense. 
U.S. Const. amend. V.  Generally,
this clause protects against (1) a second prosecution for the same offense
after acquittal, (2) a second prosecution for the same offense after
conviction, and (3) multiple punishments for the same offense.  Brown v. Ohio, 432 U.S. 161, 165, 97
S. Ct. 2221, 2225 (1977); Ex parte Cavazos, 203 S.W.3d 333, 336 (Tex.
Crim. App. 2006).  To determine whether
both offenses are the same under (3), we must examine the elements of the
applicable statutes to determine whether each statute Arequires
proof of a fact which the other does not.@  Blockburger v. United States, 284 U.S.
299, 304, 52 S. Ct. 180, 182 (1932). 
Under Blockburger, we are to focus on the statutory elements
found in the charging instruments.  Bigon v. State, 252 S.W.3d 360, 370 (Tex.
Crim. App. 2008); Parrish v. State, 869 S.W.2d 352, 353B55 (Tex.
Crim. App. 1994).








A double jeopardy violation may be raised for the
first time on appeal when the undisputed facts show the double jeopardy
violation is clearly apparent on the face of the record and when enforcement of
usual rules of procedural default serves no legitimate state interests.  Gonzalez v. State, 8 S.W.3d 640, 643
(Tex. Crim. App. 2000).  For convictions
involving multiple punishments for the same offense, the double jeopardy
violation is clearly apparent on the face of the record when the record
affirmatively shows multiple punishments resulting from the commission of a
single act that violated two separate penal statutes, one of which is subsumed
in the other.  See Cervantes v. State,
815 S.W.2d 569, 572 (Tex. Crim. App. 1991), cert. denied, 502 U.S. 1110
(1992); Garfias v. State, No. 02-06-00398-CR, 2008 WL 2404268, at *1
(Tex. App.CFort Worth June 12, 2008, pet.
granted) (mem. op., not designated for publication); Perez v. State, No.
02-06-00225-CR, 2007 WL 2744914, at *6 (Tex. App.CFort
Worth Sept. 20, 2007, pet. ref=d) (mem.
op., not designated for publication).

When a defendant has been prosecuted and
convicted in a single criminal action of two or more offenses that constitute
the same offense, in violation of double jeopardy, the remedy is to apply Athe most
serious offense test.@ 
The most serious offense is the one for which the greatest sentence was
assessed; in those cases, the most serious offense is retained and the less
serious offense is set aside.  Ex
parte Cavazos, 203 S.W.3d at 338.

B.     Analysis








In this case, Appellant did not raise a double
jeopardy objection during the bench trial; however, a violation is clear on the
face of the record.  See Gonzalez,
8 S.W.3d at 643.  The State relied on
Appellant=s act of hitting Rios with a
stick to prove the aggravated assault offense and part of the aggravated
robbery offense.  See Tex. Penal
Code Ann. ' 22.01(a)(1) (Vernon Supp.
2008), '' 29.02(a)(1),
29.03(a)(2).  According to the language
in the indictment, for the aggravated assault, the State had to prove Appellant
caused bodily injury and Aused or exhibited a deadly
weapon@ (Ato wit:
a stick@) and
for the aggravated robbery charge, the State had to prove this same act occurred
in the commission of a theft.  See id.
'
22.01(a)(1) (defining assault as intentionally, knowingly or recklessly
cause[ing] bodily injury to another), '' 29.02(a)(2)
(defining robbery), 29.03(a)(2) (defining aggravated robbery); see also,
Naji v. State, No. 02-06-00260-CR, 2007 WL 1266872, at *2 (Tex. AppCFort
Worth April 26, 2007, pet. ref=d) (mem.
op., not designated for publication) (stating that Athere is
no robbery without an assault@).  Thus, the two convictions violated double
jeopardy prohibitions because the two offenses constitute the same offense.








We must retain the conviction for the most
serious offense and set the other aside. 
Ex parte Cavazos, 203 S.W.3d at 337.  The judgments contain identical sentences,[8]
so we retain the aggravated robbery conviction and sentence and vacate the
aggravated assault conviction and sentence. 
See Martinez v. State, 225 S.W.3d 550, 555 (Tex. Crim. App. 2007)
(holding that, when both offenses carry the same punishment, the appellate
court may strike either conviction).  We
retain the aggravated robbery charge because it appears first in the
indictment.  See Naji, 2007
WL 1266872, at *3 (citing Ex parte Cravens, 805 S.W.2d 790, 791 (Tex.
Crim. App. 1991)) (retaining the first count in the indictment).  We sustain Appellant=s second
point and modify the judgment to reflect only a conviction for aggravated
robbery with a deadly weapon and the sentence of thirty years=
confinement.  See Naji, 2007 WL
1266872, at *3.

V.     Conclusion








Having overruled Appellant=s first
point and sustained his second point, we modify the trial court=s
judgment to vacate the conviction and sentence for aggravated assault with a
deadly weapon and reflect only the conviction for aggravated robbery with a
deadly weapon, with the sentence of thirty years=
confinement.  We affirm the trial court=s
judgment as modified.  See Tex. R.
App. Proc. 43.2(b).

PER
CURIAM

 

PANEL:  GARDNER, J.; CAYCE, C.J.; and MCCOY, J.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  August 6, 2009











[1]See Tex. R. App. P. 47.4.





[2]When asked about his
previous statement before trial to his attorney that Appellant said the word Awallet@ during the attack, Rios
stated that he was not absolutely certain that he had heard Appellant say that
word.





[3]Rios testified that he
works Avery little@ now because he suffers
from convulsions, which he did not experience prior to the attack.  Rios stated that he also suffers from memory
loss.





[4]Detective Randolph
testified about this interview and stated that Appellant had also told him that
he Afronted@ Rios the cocaine,
expecting to be paid later.





[5]Under section 31.03,
theft is defined as Aunlawfully
appropriat[ing] property with intent to deprive the owner of property.@  Tex. Penal Code Ann. ' 31.03 (Vernon Supp.
2008).





[6]See Collins v. State, 800 S.W.2d 267, 269
(Tex. App.CHouston [14th Dist.]
1990, no pet.) (holding that evidence of a creditor assaulting a debtor for the
purpose of collecting a debt was sufficient to support aggravated robbery
conviction).





[7]Rios was not able to
identify the other individuals who attacked him from behind but confirmed that
Appellant was present and did not warn or help him when the attack happened.





[8]Appellant did not raise
this discrepancy in his argument; however, the reporter=s record reveals that the
trial court orally pronounced a sentence of thirty years for the aggravated
robbery and ten years for the aggravated assault; however, the written
judgments state that both sentences are for thirty years.  The Court of Criminal Appeals has stated that
when there is a conflict between the oral pronouncement and the written judgment,
the oral pronouncement controls and the judgment must be reformed to conform to
that sentence.  See Thompson v. State,
108 S.W.3d 287, 290 (Tex. Crim. App. 2003). 
Because our disposition resolves this discrepancy, we will not reform
the judgments.