# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
### NO. 03-10-00453-CR
---

**Jason Mack, Appellant**

**v.**

**The State of Texas, Appellee**

---
### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
### NO. D-1-DC-08-904089, HONORABLE CHARLES F. BAIRD, JUDGE PRESIDING
---

### M E M O R A N D U M   O P I N I O N

Jason Mack was tried on three counts of aggravated robbery with a deadly weapon of three individuals—Melvin Kirk, Angel Kirk, and Hwang Pollock. The jury acquitted Mack of robbing Pollock, but failed to return a verdict on the counts concerning the Kirks. Mack contended in a petition for writ of habeas corpus that collateral estoppel prevented retrial on the counts concerning robbery of the Kirks because the facts underlying the count on which he was acquitted were the same as those underlying the remaining counts. The record does not show whether the trial court ruled on this petition. A few days later, Mack pleaded guilty to robbing Melvin Kirk, and the State waived the charge concerning Angel Kirk. The court deferred adjudication and placed Mack under community supervision for seven years. Later, finding that Mack violated the terms of community service, the trial court adjudicated Mack guilty of aggravated robbery of Melvin Kirk

with a deadly weapon and sentenced him to thirty years in prison. Mack contends that his conviction

for robbing Melvin Kirk violates the prohibition of double jeopardy. We will affirm the judgment.[1]

The prohibition of double jeopardy is intended in part to prevent the State from

putting a person on trial for an offense after that person has received a verdict on that same offense.

*See* U.S. Const. amend V; Tex. Const. art. 1, § 14; *see also* Tex. Code Crim. Proc. Ann. art. 28.13

(West 2006). Collateral estoppel applies in the double-jeopardy context to bar prosecutions based on

fact situations already resolved by a factfinder. *See Ashe v. Swenson*, 397 U.S. 436, 443-44 (1970).

To determine whether collateral estoppel bars a subsequent prosecution, courts must determine:

"(1) exactly what facts were 'necessarily decided' in the first proceeding; and (2) whether those

'necessarily decided' facts constitute essential elements of the offense in the second trial." *Ex parte*

*Taylor*, 101 S.W.3d 434, 440 (Tex. Crim. App. 2002).

In *Ashe*, six men playing poker were robbed together during their game by three or

four masked men. 397 U.S. at 437. Bobby Ashe was one of the men indicted for robbery. In a trial

on the charge that Ashe robbed one of the players, the State proved the robbery and the victim,

---

[1] In its brief, the State argues that Mack's appeal is not properly before us because it follows the adjudication of guilt rather than the original plea. The State contends that, although the trial court certified that appellant had a right to appeal from the adjudication, the court had previously certified that he did *not* have the right to appeal from the plea-bargained adjudication. The State also contends that because Mack is really attacking the original plea, his notice of appeal following the adjudication of guilt was untimely. The trial court had not expressly ruled on the double jeopardy claim when it accepted Mack's plea. We observe that, although failure to raise a double jeopardy claim at trial will in most cases waive the issue, a double-jeopardy claim may be raised for the first time on appeal when the "undisputed facts show the double-jeopardy violation is clearly apparent on the face of the record and when enforcement of usual rules of procedural default serves no legitimate state interests." *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000). *But see King v. State*, 161 S.W.3d 264, 267 (Tex. App.—Texarkana 2005, pet. ref'd) (appellant cannot accept benefits of community supervision and then complain of double jeopardy for the first time after supervision is revoked). Without deciding the merits of the State's procedural contentions, we reach the merits of Mack's double-jeopardy argument and affirm the judgment.

but the evidence that Ashe was one of the robbers was disputed. *Id.* at 438. The jury found Ashe not guilty of the robbery. *Id*. at 439. At a subsequent trial concerning the charge that Ashe robbed another player during the same course of conduct, Ashe was convicted. *Id.* at 439-40. The Supreme Court reversed, holding that, based on the evidence presented, the jury in the first trial must have found that Ashe was not one of the robbers. *Id*. at 445. The Supreme Court reasoned that "the record is utterly devoid of any indication that the first jury could rationally have found that an armed robbery had not occurred, or that Knight had not been a victim of that robbery. The single rationally conceivable issue in dispute before the jury was whether the petitioner had been one of the robbers." *Id.* The Supreme Court held that, just as prosecutors could not retry Ashe for robbery of the first player, prosecutors could not try Ashe for robbery of another player during the same course of conduct. *Id*. at 446.

Mack argues that the same is true in this case. He argues that the evidence in the trial showed that he was involved in the robbery of three victims and that the only disputed issue before the jury then was his contention that he was forced to participate in the robbery under duress. He contends that his acquittal of the charge of robbing Pollock shows that the jury must have found that he acted under duress. He argues that the implicit finding of duress must apply to excuse him of the charge of robbing Melvin Kirk. While we do not have the record of the first trial before us,[2] Mack

---

[2] The absence of the record of the previous trial might be sufficient by itself to doom Mack's claims because that absence hinders his ability to demonstrate double jeopardy and our ability to conduct the required review. *See Ashe v. Swenson*, 397 U.S. 436, 444 (1970) ("Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.'" Citation omitted.) We will examine the record before us to determine if Mack has demonstrated that the former prosecution bars this one.

relies on the probable cause affidavit in which a sheriff's detective swore that Mack and two others robbed several men at gunpoint. The affidavit begins with an assertion that Pollock prompted the investigation with a 911 call in which he told the operator he was being chased by a man with a gun. Deeper into the affidavit, the detective recounts the following narratives from three different witnesses' perspectives:

> Pollock stated he went to Plaza de Mexico to go to the game room and play. Pollock stated he has been to this particular game room several times in the past. Poll[o]ck stated after arriving he knocked on the door. A white male who was later identified as being Jason Mack answered the door. Pollock said he did not recognize Mack and decided not to enter. A short time later the Kirks arrived. Poll[o]ck said he told them he thought something was wrong. Mack came outside. Melvin Kirk approached Mack. Poll[o]ck said Mack pointed a black revolver at Melvin Kirk, so he took off running toward the front gate to call 911. Pollock stated he told one of the first responding deputies that Mack got into a silver pickup. Poll[o]ck said he was told to hide.
>
> . . . .
>
> Melvin and Angel Kirk stated they had heard about the game room at Plaza de Mexico from some ladies where they play bingo, so they decided to go play. Upon their arrival at approximately 4:00 A.M., they observed Mack, who they described as having a shaved head and wearing a blue shirt, at the front door of the game room. They asked what was going on. The Kirks stated they saw Pollock run away. The Kirks said Mack pulled up his white shirt and pulled a black handgun from his pants and pointed it at them. The Kirks stated Mack told them to go inside the game room. Two other male subjects that appeared to be Hispanic, came out the door, displayed a crowbar, and told them to go inside as well. They complied. The Kirks stated they were taken to a bathroom where they saw approximately 7-10 individuals whose hands were tied behind their backs. The Kirks said Mack pointed the revolver at them while Christopher Morehead went through Angel's purse.
>
> . . . .
>
> When the Kirks arrived Jason let them in. Morehead said they saw Pollock running away. Morehead stated the Kirks were taken by gunpoint to the bathroom and held along with the other patrons that were tied up.

4

The jury found Mack not guilty of robbing Pollock and failed to return a verdict on the charges that he robbed the Kirks. Mack contends that the fact that the jury's sole verdict was "not guilty" means that they necessarily found that he participated under duress—a finding that would absolve him of all three robberies.

Our review of this affidavit and the remainder of the record presented does not support Mack's contention in light of the applicable law. The offense of robbery is defined as follows:

> (a) A person commits an offense if, in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property, he:
>
> (1) intentionally, knowingly, or recklessly causes bodily injury to another; or
>
> (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.

Tex. Penal Code Ann. § 29.03 (West 2011). It is an affirmative defense to prosecution that the defendant engaged in the proscribed conduct because he was compelled to do so by threat of imminent death or serious bodily injury to himself or another. *Id.* § 8.05(a). The jury in the first trial might have acquitted Mack of robbing Pollock because it found Mack acted under duress, but it seems likely that, if it had, the jury would also have acquitted Mack of robbing the Kirks instead of failing to reach a verdict on those charges. We find it more reasonable to conclude that the jury acquitted Mack of robbing Pollock because it found that Pollock escaped before Mack could intentionally threaten or place him into sufficient fear to constitute robbery. Although the detective averred that Pollock told the 911 operator that a man with a gun was chasing him, the detective later stated that Pollock told him he turned away from the game room because he did not recognize Mack.

5

He ran away when he saw Mack pull a gun on the Kirks. The detective wrote that the Kirks said they saw Pollock run away, then that they saw Mack pull the gun. The detective also wrote that Morehead said that, when Mack let the Kirks in, he saw Pollock run away. The detective's affidavit showing clear differences between the Mack-Pollock interaction and the Mack-Kirk interactions plainly distinguishes this case from *Ashe*, where the record undisputedly showed that all six poker players were robbed by the same group of men, and the Supreme Court held that the jury's acquittal of Ashe as to the robbery of one of the players could have meant only that the jury found Ashe was not one of the robbers. *Ashe*, 397 U.S. at 445. By contrast, based on the affidavit in this case, the jury very well could have acquitted Mack of robbing Pollock because it determined that Pollock was not robbed by anyone, including Mack. Such a finding would not preclude a subsequent factfinder from determining that Mack had robbed others, including Melvin Kirk. The trial court properly concluded that the jury's acquittal of Mack for the charge of robbing Pollock did not bar subsequent prosecutions of Mack for robbing others, including Melvin Kirk.

We affirm the judgment.

_____

Jeff Rose, Justice

Before Justices Puryear, Rose and Goodwin

Affirmed

Filed: August 31, 2011

Do Not Publish

6