Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



# MEMORANDUM OPINION

No. 04-10-00797-CR

Adam S. **DELGADO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 227th Judicial District Court, Bexar County, Texas
Trial Court No. 2009CR1078
Honorable Philip A. Kazen, Jr., Judge Presiding

Opinion by:    Phylis J. Speedlin, Justice

Sitting:        Karen Angelini, Justice
               Phylis J. Speedlin, Justice
               Rebecca Simmons, Justice

Delivered and Filed:  July 5, 2012

AFFIRMED

Adam S. Delgado was convicted by a jury of two counts of aggravated sexual assault of a child, two counts of indecency with a child, and one count of continuous sexual abuse of children. On appeal, Delgado contends: (1) the trial court erred in denying his motion to quash; (2) his convictions violate the constitutional guarantee against double jeopardy; (3) the jury was not required to reach a unanimous verdict; (4) the trial court erred in admitting the testimony of a child protective services investigator and a forensic interviewer; and (5) the trial court abused its

discretion in denying his request to appear before the jury wearing his military uniform. We affirm the trial court's judgment.

## MOTION TO QUASH

The indictment in the underlying cause contained five counts alleging: (I) aggravated sexual assault on or about November 1, 2008, by Delgado penetrating the mouth of M.H. with his sexual organ while using and exhibiting a deadly weapon: his bodily fluids;[1] (II) aggravated sexual assault on or about November 1, 2008, by Delgado causing M.H.'s sexual organ to contact Delgado's mouth while using and exhibiting a deadly weapon: his bodily fluids; (III) indecency with a child on or about November 1, 2008, by Delgado touching M.H.'s genitals; (IV) indecency with a child on or about November 1, 2008, by Delgado touching M.H.'s anus; and (V) continuous sexual abuse of children on or about June 1, 2008 through on or about November 1, 2008, by Delgado, during a period of 30 days or more in duration, committing two or more acts of sexual abuse against M.D. and M.H. in violation of one or more penal laws including aggravated sexual assault by: (a) penetrating M.H.'s sexual organ with his finger; (b) causing the anus of M.H. to contact his mouth; and (c) causing the anus of M.D. to contact his sexual organ. Delgado filed a motion to quash the indictment asserting the following:

> Defendant's right to a fair and impartial trial will be denied if the State is allowed to include Count V of the Indictment and present evidence to that effect in its case in chief in the above styled and numbered cause. Count V alleges an entirely different incident with a different victim and is not an essential element necessary for the State to prove its case in Counts I-IV. This Court has jurisdiction over this Indictment without the necessity of Count V.

> The prejudicial nature of Count V far outweighs any probative value the State may argue Count V contains.

During the hearing on Delgado's motion to quash, his attorney argued Count V deals with a different victim, M.D., than the victim in Counts I-IV, M.H. The attorney noted that the State

---

[1] Evidence was presented that Delgado was HIV positive.

had indicted Delgado in a separate cause for acts alleged to have been committed against M.D., so "by granting this motion to quash count five, or at least remove the third part, I guess what you would call a paragraph under part five, the State is not being prejudiced." The attorney argued adding a second victim, M.D., in the third sentence under Count V would unfairly prejudice Delgado's constitutional rights "in the sense of fair play and justice." The attorney requested "a severance or a quashing of count five as it relates to [M.D.] and that issue."

In his brief on appeal, Delgado argues his motion to quash was directed at a limitation set forth in section 21.02(e) of the Texas Penal Code because the allegations in Counts I-IV and the first two offenses listed in Count V were against the same victim in the same criminal transaction. Delgado also argues that the indictment failed to provide sufficient notice to prepare a defense as to the bodily fluid allegation since bodily fluids are not per se deadly weapons.

In order for error to be preserved for appellate review, rule 33.1 of the Texas Rules of Appellate Procedure requires the record to show that the complaint was made to the trial court by a timely request, objection, or motion that stated the grounds for the ruling being sought with sufficient specificity to make the trial court aware of the complaint unless the specific grounds were apparent from the context. TEX. R. APP. P. 33.1(a). "This Rule encompasses the concept of 'party responsibility.'" *Pena v. State*, 285 S.W.3d 459, 463 (Tex. Crim. App. 2009). "The complaining party bears the responsibility of clearly conveying to the trial judge the particular complaint, including the precise and proper application of the law as well as the underlying rationale." *Id*. at 463-64. "Whether a party's particular complaint is preserved depends on whether the complaint on appeal comports with the complaint made at trial." *Id*. at 464. "In making this determination, we consider the context in which the complaint was made and the parties' shared understanding at that time." *Id*.

- 3 -

The record in this case demonstrates that the complaint made at trial was the inclusion of the second victim, M.D., in the third paragraph of Count V of the indictment. The complaint on appeal pertaining to allegations involving the first victim, M.H., does not comport with the complaint made at trial. Accordingly, this error is not preserved for appellate review. *See* TEX. R. APP. P. 33.1(a); *Pena*, 285 S.W.3d at 463-64.

## DOUBLE JEOPARDY

In his second issue, Delgado argues that double jeopardy barred him from being convicted of (1) three counts of aggravated sexual assault (Counts I, II, and V) which were the same criminal conduct; (2) both: (a) continuous course of sexual abuse by penetrating the sexual organ of M.H. with his finger; and (b) indecency with a child by touching part of M.H.'s genitals; and (3) both (a) continuous course of sexual abuse by causing the anus of M.H. to contact Delgado's mouth; and (b) indecency with a child by touching the anus of M.H. Both Delgado and the State note that Delgado did not preserve his double jeopardy claim at trial. Because the first two double jeopardy violations alleged by Delgado would fail even if the complaints had been preserved, we will delay our discussion of the preservation issue until our discussion of the third double jeopardy violation asserted by Delgado in his brief.

"The Double Jeopardy Clause of the Fifth Amendment, applicable to the states through the Fourteenth Amendment, protects an accused against a second prosecution for the same offense for which he has been previously acquitted or previously convicted." *Littrell v. State*, 271 S.W.3d 273, 275 (Tex. Crim. App. 2008). "It also protects an accused from being punished more than once for the same offense." *Id.* "The instant case involves the issue of multiple punishments stemming from a single prosecution." *Id.* "In the multiple-punishments context, two offenses may be the same if one offense stands in relation to the other as a lesser-included

offense, or if the two offenses are defined under distinct statutory provisions but the Legislature has made it clear that only one punishment is intended." *Id.* at 275-76. "Sameness in this context is a matter of legislative intent." *Id.* at 276.

"The traditional indicium of that legislative intent is the so-called 'same elements' test of *Blockburger v. United States*," 284 U.S. 299, 304 (1932). *Id.* "According to that test, it should be presumed that the Legislature did not regard two statutorily defined offenses to be the same if each provision requires proof of a fact which the other does not." *Id.* (internal quotations omitted). "However, for purposes of multiple-punishments analysis, the *Blockburger* test is only a tool of statutory construction — and not even an exclusive one." *Id.* Double jeopardy does not bar a defendant from being convicted of separate and distinct statutory aggravated sexual assault offenses involving separate and distinct acts. *Vick v. State*, 991 S.W.2d 832, 833 (Tex. Crim. App. 1999). Separate charges are also proper where the same offense occurred on different dates. *Hiatt v. State*, 319 S.W.3d 115, 126 (Tex. App.—San Antonio 2010, pet. ref'd).

In this case, M.H. testified that the sexual assault occurred on two separate dates – once while Delgado lived in an apartment and once after Delgado moved to a new home in November of 2008. Count I and II are separate and distinct statutory aggravated sexual assault offenses involving separate and distinct acts that M.H. testified occurred in Delgado's new home.[2] *Compare* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(ii) (West Supp. 2011) (defining aggravated sexual assault to include a person intentionally or knowingly causing the penetration of the mouth of a child by the sexual organ of the actor) *with* TEX. PENAL CODE at § 22.021(a)(1)(B)(iii) (defining aggravated sexual assault to include a person intentionally or knowingly causing the sexual organ of a child to contact or penetrate the mouth of the actor).

---

[2] M.H. testified that Delgado "put his middle in [her] mouth" at the apartment and the house. M.H. testified that Delgado "put his mouth on [her] middle" at the apartment and the house.

Count V also alleges separate and distinct statutory aggravated sexual assault offenses involving separate and distinct acts that M.H. testified occurred while Delgado lived in an apartment.[3] *Compare* TEX. PENAL CODE at § 22.021(a)(1)(B)(i) (defining aggravated sexual assault to include a person intentionally or knowingly penetrating the sexual organ of a child by any means) *with* TEX. PENAL CODE at § 22.021(a)(1)(B)(iv) (defining aggravated sexual assault to include a person intentionally or knowingly causing the anus of a child to contact the mouth of the actor). Accordingly, Delgado's conviction of Counts I, II, and V were not barred by double jeopardy. Similarly, because a jury could find from the testimony of M.H. and the sexual assault nurse examiner who examined M.H. that Delgado engaged in the act alleged in Count III and the first paragraph of Count V on two different dates at both the house and at the apartment, no double jeopardy violation resulted.[4] *Hiatt*, 319 S.W.3d at 126.

Delgado's final double jeopardy complaint is that a double jeopardy violation resulted from his conviction of Count IV, indecency with a child by touching the anus of M.H., and the second paragraph in Count V, a continuous course of sexual abuse by, among other acts, causing the anus of M.H. to contact Delgado's mouth.[5] As previously noted, Delgado concedes that he did not raise his double jeopardy claim at trial. A double jeopardy claim may be raised for the first time on appeal only when: (1) the undisputed facts show the double jeopardy violation is clearly apparent from the face of the record; and (2) enforcement of usual rules of procedural

---

[3] M.H. testified that Delgado "touched my middle" with his hand at the apartment but not at the house. M.H. also testified that Delgado put his mouth on her bottom where she goes number two at the apartment but not at the house.

[4] Jennifer Degner, the sexual assault nurse examiner who examined M.H., testified that M.H. reported the last assault occurred at Delgado's house. M.H. reported that she was lying in bed, and Delgado pulled her underwear down to her knees. M.H. reported that Delgado licked his index and middle fingers and rubbed her genitals. Although M.H. testified that Delgado "touched my middle" with his hand at the apartment but not at the house, the jury could have disbelieved her trial testimony based on her earlier report and the difficulty M.H. had in testifying at trial.

[5] M.H. testified that Delgado put his mouth on her bottom where she goes number two at the apartment but not at the house. Degner testified that M.H. reported that Delgado put his tongue inside her butt in response to her asking if Delgado "*ever* did anything to her butt." Accordingly, the evidence does not establish that Delgado committed this act on two different dates.

default serves no legitimate state interests. *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000).

In *Gonzalez*, Count I of the appellant's indictment charged aggravated robbery in three separate paragraphs alleging alternative means of committing the offense. 8 S.W.3d at 640. The three paragraphs were submitted to the jury disjunctively. *Id*. Count II of appellant's indictment charged injury to an elderly individual in a single paragraph. *Id*. Appellant was convicted of both offenses by a general verdict. *Id*. "Appellant claimed for the first time on appeal that it was *possible* he was multiply punished for the same offense because the injury to an elderly offense [was] a lesser included offense of the aggravated robbery offense as set out in paragraphs one and three and the jury's general verdict of aggravated robbery *could* have rested on one of these paragraphs." *Id*. at 641. "Appellant conceded that if the jury's general guilty verdict of aggravated robbery rested on paragraph two, then no multiple punishments issue was presented." *Id*.

The Texas Court of Criminal Appeals held that appellant failed to establish the first prong for not requiring error preservation because the face of the record failed to show a multiple punishments violation since the jury's general guilty verdict of aggravated robbery could have rested on paragraph two. *Id*. at 645. In addition, the court concluded that appellant also failed to establish the second prong for not requiring error preservation. Id. at 645-46. The court reasoned that requiring appellant to have timely raised his multiple punishments claim in the trial court would have served legitimate state interests because timely raising the matter in the trial court "would have provided the trial court and the prosecution an opportunity to remove the basis of the objection, and it also would have provided the prosecution the opportunity to obtain

an aggravated robbery conviction based on paragraph two without the risk of an unnecessary retrial in the face of a valid multiple punishment claim." *Id.*

Similar to the analysis in *Gonzalez*, we hold that Delgado also has failed to meet the two prongs required in order to raise his double jeopardy complaint for the first time on appeal. First, the three paragraphs in Count V alleging three separate aggravated sexual assault offenses were submitted in the disjunctive and the jury was only required to find that two of the alleged aggravated sexual assault offenses occurred.[6] Accordingly, because the jury's general guilty verdict of continuous sexual abuse of children could have rested on the first and third paragraphs of Count V, Delgado has not sustained his burden of presenting a record showing on its face a multiple punishments violation. *See id.* at 645. Moreover, requiring Delgado to have timely raised his multiple punishments claim in the trial court served legitimate state interests and is consistent with the underlying policies of the general rules of procedural default. *See id.* "Timely raising the matter in the trial court would have provided the trial court and the prosecution the opportunity to remove the basis of the objection, and it also would have provided the prosecution the opportunity to obtain [a conviction for continuous sexual abuse of children] based on the [the first and third paragraphs of Count V or other allegations of sexual abuse involving M.H. or M.D.] without the risk of an unnecessary retrial in the face of a valid multiple

---

[6] The application paragraph of the jury charge stated:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 1st day of June, 2008, through on or about the 1st day of November, 2008, in Bexar County, Texas, the defendant, Adam Delgado, during a period that was 30 days or more in duration, committed two or more acts of sexual abuse against M.D. and/or M.H., said acts of sexual abuse having been violations of one or more of the following penal laws, including Aggravated Sexual Assault, namely: causing the penetration of the sexual organ of M.H. by Adam Delgado's finger, and/or by causing the anus of M.H. to contact the mouth of Adam Delgado, and/or by causing the anus of M.D. to contact the sexual organ of Adam Delgado, and, at the time of the commission of each of the acts of sexual abuse, Adam Delgado was 17 years of age or older and M.D. and M.H. were children younger than 14 years of age, then you will find the defendant guilty of continuous sexual abuse of young child or children as charged in Count V of the indictment.

punishments claim." *Id*. at 645-46. Because Delgado failed to preserve the third double jeopardy claim asserted in his brief, the complaint is overruled.

<h2 align="center">J<small>URY</small> U<small>NANIMITY</small></h2>

In his third issue, Delgado argues that all of the allegations in the indictment "could have occurred during one transactions [sic] on November 1, 2008." Delgado then argues, "Because multiple acts were described in somewhat vague details by [M.H.], and the evidence as to each act was conflicting, some jurors could have relied upon one incident for conviction, while others could have relied upon another." Delgado further argues, "The description of the events by [M.H.] described offenses that may not allow separate prosecutions because the conduct consist [sic] of the same offenses, part of the same offense, or lesser included offense. Under this application, there cannot be unanimity of multiple verdicts constituting the same offense [sic] conduct, part of the same transaction of the conduct or of lesser included offenses."

Jury unanimity is required in all criminal cases. *Pizzo v. State*, 235 S.W.3d 711, 714 (Tex. Crim. App. 2007). "Unanimity ensures that all jurors reach a consensus on the same act for a conviction." *Id*.

As previously noted, Delgado was charged with committing five separate and distinct offenses. Although Counts I-IV charged Delgado with committing four of these offenses on or about November 1, 2008, Count V charged Delgado with committing that offense on or about June 1, 2008 through on or about November 1, 2008. M.H. testified that certain acts were committed while Delgado lived in an apartment and certain acts were committed after Delgado moved into his new home. M.H. testified that the acts with which Delgado was charged in Count V occurred while Delgado lived in his apartment. Accordingly, Delgado is incorrect in asserting

that all of the allegations could have occurred on November 1, 2008, which was after Delgado moved into his house.

It appears that Delgado is attempting to mix his double jeopardy argument with his jury unanimity argument. With regard to jury unanimity, the jury charge contained a separate application paragraph pertaining to each count in the indictment. The jury charge also contained separate verdict forms for each count. Finally, the jury was instructed that its verdict was required to be unanimous. Accordingly, because the jury was required to unanimously agree that each of the separate and distinct offenses occurred, Delgado's third issue is overruled. *See Martin v. State*, 335 S.W.3d 867, 872 (Tex. App.—Austin 2011, pet. ref'd) (noting due process not violated by permitting a conviction based on a jury's unanimous finding that the defendant engaged in continuous sexual abuse of children through a course of conduct consisting of repeated acts of sexual abuse but without requiring jury unanimity as to the individual acts that made up that course of conduct) (citing *Jacobsen v. State*, 325 S.W.3d 733, 739 (Tex. App.—Austin 2010, no pet.)).

## ADMISSIBILITY OF EVIDENCE

Delgado's fourth issue challenges the admissibility of testimony by a child protective services investigator of statements Delgado made to him while in jail awaiting trial. In his sixth issue, Delgado contends the trial court erred in admitting testimony by a forensic interviewer that an abused child can still love her abuser.

A trial judge's decision on the admissibility of the evidence is reviewed under an abuse of discretion standard. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). The ruling will not be reversed on appeal if it is within the zone of reasonable disagreement. *Id.*

A.    Child Protective Services Investigator

Delgado contends that the statements he made to Santiago Garcia, a child protective services investigator, were obtained without proper *Miranda* warnings while he was in jail. Delgado contends that Garcia was acting in a law enforcement capacity when he interviewed him because he was gathering information as to whether Delgado sexually assaulted a potential third victim. Specifically, Delgado sought to exclude his statement admitting to sexually abusing M.H., his niece, and M.D., one of his daughters, while denying sexually assaulting his other daughter.

"We need not determine . . . whether [Delgado's] statements were the product of custodial interrogation because the statements were introduced during the State's rebuttal and were introduced for purposes of impeachment." *Lykins v. State*, 784 S.W.2d 32, 35-36 (Tex. Crim. App. 1989). As the United States Supreme Court has stated: "The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." *Harris v. New York*, 401 U.S. 222, 226 (1971). Because Garcia's testimony was introduced as rebuttal evidence to impeach Delgado's testimony denying the sexual abuse allegations, Delgado's complaint is overruled. *See Lykins*, 784 S.W.2d at 35-36.

B.     Forensic Interviewer

In his sixth issue, Delgado contends the trial court erred in failing to conduct an admissibility determination of the "relevancy and reliability" of the expert testimony of Lisa Holcomb, a forensic interviewer who testified that an abused child can still love her abuser. In arguing the issue, however, Delgado refers to Holcomb's testimony "of her observations of behavioral symptoms associated with abuse [sic] children," and her testimony "that [M.D.] expressed behavior that was common to children who had been sexually abused." The State

contends error was not preserved with regard to some of Delgado's appellate contentions. Therefore, before addressing the merits of this issue, we will review the objections made to the admissibility of Holcomb's testimony at trial.

Holcomb testified that she had been employed with the Children's Assessment Center for over 15 years. After graduating with a bachelor of science in behavioral science psychology, Holcomb was employed with child protective services for three years investigating all realms of child abuse including taking intake reports and providing on-going services to families. While employed by child protective services, Holcomb was trained as a forensic interviewer which was her position at Children's Assessment Center. Holcomb testified that she interviews children who have been the victims of sexual abuse and questions and documents their responses regarding the abuse they suffer. Holcomb estimated that she had interviewed over 11,000 children and was qualified in the State of Texas as an expert in the area of child sexual abuse. Holcomb testified that she was the only other person in the room while interviewing M.D. Holcomb testified that parents are not allowed in the interview so the child does not feel undue influence or pressure. Holcomb testified that children are sometimes reluctant to talk in front of a parent out of fear of retaliation, of not being believed, or of not wanting to hurt the parent because they may still love the parent and not want the parent to be distraught or sad. Holcomb described how different children may respond to being interviewed. Holcomb testified that M.D. was very reluctant to speak and somewhat catatonic or frozen during the interview which can be consistent with a child who has been sexually abused. In response to the dynamics of sexual abuse, Holcomb testified that it is very uncommon for children to disclose abuse right away due to the shame involved or fear of what could happen to their family or siblings. Holcomb further testified that a child disclosing abuse discloses only a "little bit" of information at a time.

Holcomb again testified that children are afraid to make an outcry right away after which the following exchange occurred:

> Q.     And the dynamics of a child who's abused by somebody who is a family member, say a parent, is it possible for that child to still love that parent?
> A.     Yes.
> Q.     And can you describe for the jury a little bit about that dynamic?
> [Delgado's attorney]:  Your Honor, I'm going to object to this line of testimony.  We're getting into extra testimony that this witness hasn't been qualified to discuss.

In a hearing outside the jury's presence, Holcomb stated that she had testified on children's demeanors and the dynamics of sexual abuse and delayed disclosure on numerous occasions.  With regard to her expertise on whether a child abused by a parent could still love the parent, Holcomb testified that she had several experiences where children have told her that they still love the abuser.  Holcomb stated, "That's from my experiences in dealing with the children themselves and them not wanting anything to happen to the perpetrator."  At the conclusion of the hearing outside the jury's presence, Delgado's attorney renewed his objection that Howard "is not qualified as an expert in that area."  After overruling the objection, the following exchange occurred in the jury's presence:

> Q.     All right.  Now, before we took the break, I was asking you specifically about children who have been abused by a parent, and whether or not, based on your training and experience is it common for a child to still love that abuser?
> [Delgado's attorney]: I'm going to object to relevance, Your Honor.
> The Court: Overruled.
> The Witness: Yes.
> Q.     And is it common or uncommon for a child to still want to spend time with the person, in fact, who's been abusing them?
> A.     Actually, it's common.

With regard to Holcomb's testimony about "observations of behavioral symptoms associated with abuse [sic] children," and "that [M.D.] expressed behavior that was common to children who had been sexually abused," no specific objection was made when Holcomb was

- 13 -

testifying regarding these behavioral symptoms. With regard to Holcomb's testimony that an abused child can still love her abuser, Holcomb's testimony was admitted without objection when the question was first asked. Delgado raised an objection to the testimony only after Holcomb was asked to elaborate on the dynamics. "An error in the admission of evidence is cured where the same evidence comes in elsewhere without objection." *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003). Accordingly, because no objection was made when Holcomb first testified that a child can still love her abuser, the admission of her testimony a second time is not reversible error.[7]

Moreover, three separate inquiries govern the admissibility of expert testimony: (1) qualification; (2) reliability; and (3) relevance. *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006). The objection made by Delgado that resulted in the hearing outside the jury's presence was based on Holcomb's qualifications. Delgado made the same objection to Holcomb's qualifications at the conclusion of the hearing outside the presence of the jury. On appeal, however, Delgado also appears to be challenging the reliability of the testimony. Although Delgado subsequently objected on the basis of relevance, Delgado never objected on the basis of reliability. Accordingly, even if we were to consider whether the admission of Holcomb's testimony was erroneous in response to the second question despite no objection being made after the question was first asked and answered, we could only consider the merits of the issue pertaining to Delgado's qualifications because no objection was made on the basis of reliability at trial. *See* TEX. R. APP. P. 33.1(a); *Pena*, 285 S.W.3d at 463-64.

With regard to qualifications, qualification is a two-step inquiry. *Vela v. State*, 209 S.W.3d at 131. "A witness must first have a sufficient background in a particular field, but a trial

---

[7] Moreover, we note that testimony that a child can still care for her abuser also was admitted through the testimony of the forensic interviewer who interviewed M.H.

judge must then determine whether the background 'goes to the very matter on which [the witness] is to give an opinion.'" *Id.* (quoting *Broders v. Heise*, 924 S.W.2d 148, 153 (Tex. 1996)). The expert must have knowledge, skill, experience, training, or education regarding the specific issue before the court to qualify the expert to give an opinion on the particular subject. *Id.* at 132.

In this case, Holcomb had been engaged in conducting forensic interviews involving sexual abuse allegations for over fifteen years. She had a bachelor of science degree in behavioral science psychology and had conducted over 11,000 interviews. In the course of the interviews, she had experience in investigating the ongoing relationship between the child and his or her abuser and testified that children told her during their interviews that they still loved the abuser. Therefore, even if we were to consider whether admitting Holcomb's testimony was error, we would hold that Holcomb's testimony provided a sufficient basis for the trial court to determine she was qualified to testify, and the trial court did not abuse its discretion in admitting her testimony. *See Vela*, 209 S.W.3d 132-33; *cf. Robinson v. State*, No. 06-99-00165-CR, 2000 WL 1532236, at *8 (Tex. App.—Texarkana Oct. 18, 2000, no pet.) (overruling contention that attorney rendered ineffective assistance by failing to object to testimony by child protective services supervisor with master's degree in counseling and guidance that sexually abused children will continue to love their abuser because "State would have undoubtedly been able to qualify him as an expert" if objection was made) (not designated for publication).

### MILITARY UNIFORM

Delgado contends the trial court abused its discretion in denying his motion to wear his military uniform during trial. In support of this contention, Delgado cites a case relating to whether a defendant's right to a fair trial would be violated if required to appear at trial in prison

clothes. As the State notes in its brief, however, Delgado admitted that his military uniform was not the only clothing he had other than his jail uniform. At the hearing on Delgado's motion, the State argued that Delgado's military uniform would be prejudicial to the State as an effort to bolster Delgado's credibility. The trial court granted Delgado the right to wear civilian clothes but not his military uniform.

Delgado cites no authority for the proposition that a trial court abuses its discretion in denying a defendant's request to appear at trial in military uniform. We hold that the trial court did not abuse its discretion. "To hold otherwise would require us to entertain the notion that the Due Process Clause . . . provide[s] a defendant the right to appear before the jury in clothes of his choice, and perhaps of a particular style." *Johnson v. State*, 838 S.W.2d 906, 909 (Tex. App.—Corpus Christi 1992, pet. ref'd); *see also Lantrip v. State*, 336 S.W.3d 343, 351-52 (Tex. App.—Texarkana 2011, no pet.) (holding trial court did not abuse its discretion in not allowing defendant to wear camouflage clothing).

## CONCLUSION

The trial court's judgment is affirmed.

Phylis J. Speedlin, Justice

DO NOT PUBLISH