

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00268-CR

_____

KECY KING, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 396th District Court
Tarrant County, Texas
Trial Court No. 1751802

Before Sudderth, C.J.; Bassel and Walker, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

## I.  Introduction

A jury convicted Appellant Kecy King of burglary of a habitation with intent to commit assault (Count One) and burglary of a habitation with intent to commit theft (Count Two).  *See* Tex. Penal Code Ann. § 30.02(a).  The trial court assessed punishment at ten years' confinement for each offense but suspended imposition of the sentence and placed King on community supervision for six years.  King argues in her sole point that her convictions for both Count One and Two violate the double-jeopardy protections of the Fifth Amendment of the United States Constitution.  We will affirm.

## II.  Background

King and Akeem Junaid were in a dating relationship.  According to Junaid, the couple did not live together, but King spent the night at his house on occasion. Junaid testified that he ended the relationship with King in March 2022.

After Junaid ended the relationship, King would show up at his house and ring the doorbell nonstop for an hour to disturb his sleep.  She would also jump Junaid's fence and walk around in his backyard.  Junaid recalled an incident on May 5, 2022, where he backed his car out of his garage, and King appeared and started banging on his car.  King then ran into Junaid's garage and refused to leave so Junaid called the police.  King eventually made her way into Junaid's house before the police arrived, and she locked herself in the bathroom.  King told the police that she lived at Junaid's

house. The police issued King a criminal trespass warning and instructed her not to come back to Junaid's house; however, King did not comply with the warning and continued to come onto Junaid's property.

On September 11, 2022, Junaid—who worked nights—went to work around 8:30 p.m. Brenda Johnson, his girlfriend at the time, remained at his house. Johnson testified at trial that she was organizing Junaid's pantry around 1:00 a.m. when she heard a noise coming from the back patio. Johnson opened the blinds to the sliding door and saw a person she identified as King standing just outside the door. Johnson told King through the door that she was going to call the police, and King responded for her to call them. Johnson was scared, and she ran upstairs to find her phone. While she was upstairs, she heard the sound of breaking glass.

King entered the upstairs bedroom and asked Johnson why she was in King's house. Johnson was able to run back downstairs where she located her phone. King tried to prevent Johnson from calling the police, and the women struggled over the phone. King knocked the phone out of Johnson's hand and then punched her in the chest. Johnson ran out of the front door. Johnson testified that as she was running, King threw a spear—a piece of African art from Junaid's home—at her. Johnson went to a neighbor's house and called 9-1-1.

Officer Michael Chew arrived at Junaid's house at 1:29 a.m. He was concerned because he saw blood at the entryway of the home, on the front door, and inside of the home. Officer Chew called for additional officers and a supervisor to respond to

3

the scene. The officers cleared each room of the house before going into the backyard. In the backyard, Officer Chew observed that a screen was off of a window frame and there was broken glass at the bottom of the window.

After the house was secured, Johnson returned there with the police. Johnson stated that the windshield on her car was cracked and that her phone, purse, and car keys were missing from Junaid's house. She described that there was blood on the stairs, on the walls, and on the floor and that items had been removed from the walls. Johnson did not feel comfortable staying at the house, so she stayed with the neighbor. Officer Chew secured the house before leaving.

Johnson woke up around 6:00 a.m. and went outside to see if Junaid was home from work. She saw King's car in the driveway and returned to the neighbor's house to call 9-1-1, but King's car was gone before police arrived. Officer Chew responded again to the call. He testified that there were items in the driveway that were not there when he cleared the house earlier. The home's condition was worse than it was when he left. Johnson went into the home after it was cleared by police again. She testified that the house was in worse condition than before and that food was on the floor, blood was on the beds, and more items were missing. Junaid testified that his house was destroyed. He said phones, laptops, personal files, his passport, jewelry, car keys, and a gun were taken from his home.

King testified at trial that she did not break into Junaid's home. She said she was in the hospital the day before the incident and was not physically capable of the

4

acts Johnson described. She testified that she had ended the relationship with Junaid and that she did not go to his house uninvited or enter his property without permission.

### III. Double Jeopardy

In her sole point, King argues that her convictions and separate punishments for Counts One and Two violate the double-jeopardy protections of the Fifth Amendment of the United States Constitution.

The Fifth Amendment provides that no person shall have life or limb twice put in jeopardy for the same offense. U.S. Const. amend. V. Generally, this provision— the Double Jeopardy Clause—protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165, 97 S. Ct. 2221, 2225 (1977); *Ramos v. State*, 636 S.W.3d 646, 651 (Tex. Crim. App. 2021).

King did not raise her double-jeopardy complaint in the trial court. A defendant may forfeit a potential double-jeopardy violation by not asserting it in the trial court. *Langs v. State*, 183 S.W.3d 680, 686–87 (Tex. Crim. App. 2006). But she may raise a double-jeopardy claim for the first time on appeal "when the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record and when enforcement of [the] usual rules of procedural default serves no legitimate state interests." *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000). King

argues that the double-jeopardy violation is clearly apparent on the face of the record and that this court should review the record to determine if a double-jeopardy violation occurred. We disagree.

King specifically argues that each of the offenses in Counts One and Two refer to the same incident of burglary of a habitation, implicating the double-jeopardy protection against multiple punishments for the same offense. But the protection against double jeopardy does not apply to separate and distinct offenses that occur during the same transaction. *Ex parte Milner*, 394 S.W.3d 502, 506 (Tex. Crim. App. 2013). To determine if the Double Jeopardy Clause's prohibition against multiple punishments for the same offense has been violated, we assess whether an appellant has been "convicted of more offenses than the legislature intended." *Id.* at 507 (quoting *Ervin v. State*, 991 S.W.2d 804, 807 (Tex. Crim. App. 1999)); *see Ball v. United States*, 470 U.S. 856, 861, 105 S. Ct. 1668, 1671–72 (1985). To determine if the legislature intended to treat an appellant's acts as a single offense or as multiple offenses, we must ascertain the "allowable unit of prosecution" from the statutory text and any available legislative history. *Milner*, 394 S.W.3d at 507; *see Sanabria v. United States*, 437 U.S. 54, 69–70, 98 S. Ct. 2170, 2181–82 (1978); *Ex parte Hawkins*, 6 S.W.3d 554, 556–57 (Tex. Crim. App. 1999). "Although this inquiry resolves the double jeopardy analysis, it is purely one of statutory construction." *Harris v. State*, 359 S.W.3d 625, 629 (Tex. Crim. App. 2011) (quoting *Jones v. State*, 323 S.W.3d 885, 888 (Tex. Crim. App. 2010)). Statutory construction is a question of law, which we

6

review de novo. *Id.*

A person commits the offense of burglary of a habitation if, without the effective consent of the owner, she

> (1) enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony, theft, or an assault; or
>
> (2) remains concealed, with intent to commit a felony, theft, or an assault, in a building or habitation; or
>
> (3) enters a building or habitation and commits or attempts to commit a felony, theft, or an assault.

Tex. Penal Code Ann. § 30.02(a).

In *Ex parte Cavazos*, the issue before the court was whether the appellant could be convicted of two offenses of burglary of a habitation, each with a different complainant but arising from a single entry. 203 S.W.3d 333, 335 (Tex. Crim. App. 2006). The court held that the offense of burglary of a habitation is complete once the unlawful entry is made. *Id.* at 337. The allowable unit of prosecution is the unlawful entry. *Id.*

King argues that she was punished twice for a single unlawful entry. However, the record shows that King entered Junaid's house unlawfully two separate times. King initially entered Junaid's home without consent around 1:00 a.m. and had an altercation with Johnson. Johnson stated that King punched her in the chest, scratched her arms, and threw a spear at her. After arriving at the scene, the police

7

cleared each room and did not find King inside of the residence. Officer Chew secured the residence before leaving and took all items that were outside the house back into the house. Johnson went to stay with a neighbor.

Several hours later, King's car was at Junaid's residence. When Johnson entered the residence, there was more damage to the residence and additional items had been taken from the residence. Officer Chew stated that more items were scattered about and that the house looked worse than it did the first time he responded. Junaid was missing multiple items from his home, including phones, laptops, personal files, his passport, jewelry, car keys, and a gun.

King does not challenge the sufficiency of the evidence to support either conviction. A reasonable jury could have found that King initially entered the house without consent with the intent to assault Johnson or did commit or did attempt to commit assault (Count One) and entered the residence a second time without consent with intent to commit theft or did commit or did attempt to commit theft (Count Two).[1] Unlike *Cavazos*, there is evidence of two separate unlawful entries into Junaid's home. Because the record supports a finding that there were two separate unlawful

---

[1]King was indicted on two counts and each count alleged two manners and means of committing burglary as defined in subsections (1) and (3) of Texas Penal Code Section 30.02(a). The charge allowed the jury to convict King of Count One if they found she entered Junaid's residence without his effective consent (1) with intent to commit assault, or (2) did commit or did attempt to commit assault. The charge allowed the jury to convict King of Count Two if they found she entered Junaid's residence without his effective consent (1) with intent to commit theft, or (2) did commit or did attempt to commit theft.

8

entries by King, we hold that King was not punished multiple times for a single entry. King's convictions for both Count One and Count Two do not violate the double-jeopardy protections of the Fifth Amendment of the United States Constitution.

Further, King's lack of objection failed to preserve her double-jeopardy claim. It is not clearly apparent that a double jeopardy violation occurred and that enforcement of the rules of procedural default would serve no purpose. *Gonzales*, 8 S.W.3d at 643. We overrule King's sole point.

## IV. Conclusion

Having overruled King's sole point, we affirm the trial court's judgments.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: March 28, 2024

9